UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNNIE LEE SAVORY, | ) |
| | ) |
| Plaintiff, | ) 17 C 204 |
| | ) |
| vs. | ) Judge Gary Feinerman |
| | ) |
| WILLIAM CANNON, SR., as Special Representative of the Estate of Charles Cannon, MARCELLA BROWN TEPLITZ, BETH BELL, as Special Representative of Russell Buck, Peter Gerontes, and John Timmes, JOHN FIERS, CHARLES EDWARD BOWERS, JOHN STENSON, GEORGE PINKNEY, E. HAYNES, WALTER JATKOWSKI, GLEN PERKINS, ALLEN ANDREWS, HAROLD MARTENESS, MARY ANN DUNLAVEY, CARL TIARKS, and CITY OF PEORIA, ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Johnnie Lee Savory brought this suit under 42 U.S.C. § 1983 and Illinois law against the City of Peoria and over a dozen of its police officers, alleging that they framed him for the 1977 murders of James Robinson and Connie Cooper. Doc. 1. This court dismissed the suit under Civil Rule 12(b)(6) on statute of limitations grounds. 338 F. Supp. 3d 860 (N.D. Ill. 2017). The Seventh Circuit reversed as to the § 1983 claims. 947 F.3d 409 (7th Cir. 2020) (en banc). On remand, Defendants move under Rule 12(b)(6) to dismiss on grounds other than those underlying the 2017 dismissal. Doc. 128. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider

1

"documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Savory's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Savory as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

On January 18, 1977, an assailant murdered 14-year-old James Robinson and raped and murdered his 19-year-old sister Connie Cooper. Doc. 1 at ¶¶ 20-21. Both victims sustained multiple stab wounds. *Id.* at ¶ 21. The defendant officers gathered physical evidence from the scene, including hairs from the hands of both victims, blood-stained clothing, vaginal swabs from Cooper, fingerprints, and a nightstick. *Id.* at ¶ 22. None of the physical evidence incriminated Savory, then fourteen years old, whose only connection to the victims was his close friendship with Robinson. *Id.* at ¶¶ 22, 27.

The officers initially considered several suspects—including an individual who owned the nightstick found at the scene. *Id.* at ¶ 24. Days later, the officers "suddenly and inexplicably" began to focus on Savory, even though he had a verifiable alibi. *Id.* at ¶¶ 28-29. On January 25, the officers took Savory into custody and began to interrogate him. *Id.* at ¶ 31.

The interrogation took place over the course of 31 hours. *Id.* at ¶ 32. "[I]n an effort to exhaust and disorient" Savory, the officers questioned him in "tag teams" at several different locations and deprived him of food and sleep. *Id.* at ¶¶ 35-37. The officers repeatedly accused him of murdering Robinson and Cooper, "despite [his] consistent denials of any involvement in

the crime." *Id*. at ¶ 42. "As part of their plan to coerce [Savory] into incriminating himself," *id*. at ¶ 38, the officers lied to him, *ibid*., "screamed at … and threatened him," *id*. at ¶ 42, made false promises, *id*. at ¶ 45, and "stripped him naked and plucked hairs from all over his body," *id*. at ¶ 44. The officers also "improperly fed him facts of the crime and showed him pictures of the crime scene" to make his confession seem "more credible." *Id*. at ¶ 43. After forcing Savory to take a series of polygraph examinations, they falsely told him that the examinations proved his guilt. *Id*. at ¶ 38. All the while, the officers "knew [Savory] was innocent." *Id*. at ¶ 100.

At no point did the officers give Savory proper *Miranda* warnings, provide him with an attorney, or honor his many requests to remain silent. *Id*. at ¶¶ 40, 46-47, 49. After multiple hours of questioning, Savory "confessed falsely" to the murders. *Id*. at ¶ 51. The officers documented the confession in police reports, which falsely recounted the circumstances of the confession and interrogation. *Id*. at ¶ 52. Savory recanted and reasserted his innocence "[a]t the very next moment that [he] had the opportunity to talk with a police officer." *Id*. at ¶ 54.

Savory's false confession was "the reason" that he was prosecuted and twice found guilty of murdering Cooper and Robinson. *Id*. at ¶ 91. The false confession was used to convict Savory during his first trial in 1977 and, after that conviction was reversed due to a *Miranda* violation, *People v. Savory*, 403 N.E.2d 118 (Ill. App. 1980), again during his second trial in 1981. Doc. 1 at ¶¶ 1, 91. Savory was sentenced to 40-80 years' imprisonment, and his second conviction was affirmed on direct appeal. *People v. Savory*, 435 N.E.2d 226 (Ill. App. 1982).

Because Savory's false confession was the only purportedly "reliable" evidence connecting him to the murders, the officers took other steps to frame him. Doc. 1 at ¶ 58. They fabricated physical evidence, including blue pants belonging to Savory that they falsely asserted were stained with Cooper's blood. *Id*. at ¶ 63. They withheld exculpatory information obtained

3

from individuals with direct knowledge of the murders. *Id*. at ¶ 67. They procured several false witness statements. *Id*. at ¶¶ 58-59, 62. And they pressured three witnesses—Frank, Tina, and Ella Ivy—to testify at the second trial that Savory told them that he had murdered Cooper and Robinson. *Id*. at ¶¶ 58-59. The Ivy siblings have since "stated unambiguously on multiple occasions that their testimony implicating [Savory] was a lie." *Id*. at ¶ 59.

Additionally, during the criminal proceedings and following the second trial, the officers destroyed physical evidence—including the victims' hair and fingernail clippings—to prevent Savory from exonerating himself. *Id*. at ¶¶ 64-66, 70. Recent DNA testing on the physical evidence that was preserved ruled out Savory as the perpetrator. *Id*. at ¶ 75. For example, the "vaginal swabs taken from [Cooper] revealed the presence of seminal fluid and a DNA profile that definitively excludes [Savory] as the person who raped [Cooper]." *Ibid*.

All told, Savory spent thirty years in prison for crimes that he did not commit. *Id*. at ¶ 78. He was released from prison on parole in December 2006, Doc. 71-2 at 2, released from parole in December 2011, *ibid*., and pardoned by the Governor of Illinois on January 12, 2015, Doc. 1 at ¶ 86. Savory filed this suit on January 11, 2017, less than two years after the pardon.

**Discussion**

The complaint's federal counts are: (1) a § 1983 claim against the officers for coercing Savory's false confession in violation of his rights under the Fifth Amendment; (2) a § 1983 claim against the officers for coercing a false confession from Savory in violation of his due process rights under the Fourteenth Amendment; (3) a § 1983 claim against the officers for maliciously prosecuting and unlawfully detaining Savory, and thus depriving him of liberty without probable cause, in violation of the Fourth and Fourteenth Amendments; (4) a § 1983 claim against the officers for depriving Savory of his right to a fair trial, his right not to be

wrongfully convicted, and his right to be free of involuntary confinement and servitude in violation of the Thirteenth and Fourteenth Amendments; (5) a § 1983 claim against the officers for failure to intervene; and (6) a § 1983 claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Doc. 1 at ¶¶ 88-130. The complaint also brings state law *respondeat superior* and indemnification claims against the City. *Id*. at ¶¶ 145-151.

I.     **Group Pleading and Shotgun Pleading**

Defendants argue that the complaint engages in impermissible "group pleading" because, by repeatedly referring to the officers as a collective ("Defendants"), it does not specify which officer(s) committed which allegedly wrongful act(s). Doc. 128 at 10-12. True enough, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful," and "[a] complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). But where, as here, the nature and circumstances of the alleged wrongdoing do not allow the plaintiff to know at the pleading stage who among "a collective body" did precisely what, failure to plead those specifics is "not by itself a proper ground for the dismissal of the suit." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (quoting *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995)); *see also Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1194-95 (N.D. Ill. 2013) (denying the defendants' "group pleading" challenge to the complaint, reasoning that it was "not surprising that [the] [p]laintiff [could] []not, at this stage, attribute every wrongful act to a specific [d]efendant," given that the defendants were "alleged to have confused [the] [p]laintiff deliberately during the interrogation and withheld information from him leading up to and during trial"). More specificity will be required on summary judgment and, if the case gets that far, at trial. *See Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) (holding that "§ 1983 liability is premised on the wrongdoer's personal responsibility").

5

Defendants also argue, in a footnote, that the complaint engages in impermissible "shotgun pleading" by having each count incorporate by reference every other paragraph in the complaint. Doc. 128 at 10 n.4. Being presented only in a footnote, the argument is forfeited. *See Cross v. United States*, 892 F.3d 288, 294 (7th Cir. 2018) (holding that a party forfeited an issue by raising it only "succinctly in a footnote" in the district court) (internal quotation marks omitted).

## II. Coerced Confession Claims (Counts I and II)

Counts I and II allege that the officers coerced Savory to confess, violating the Fifth and Fourteenth Amendments. Doc. 1 at ¶¶ 88-98. Defendants seek dismissal of both counts, primarily on limitations grounds. Doc. 128 at 12-18. "Although the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) … is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017).

Before proceeding, the court pauses to describe what the Seventh Circuit did and did not resolve regarding the various limitations issues implicated by Savory's claims. In its 2017 dismissal order, this court held, based on the Seventh Circuit's then-prevailing understanding of the *Heck* doctrine, that Savory's claims accrued in December 2011, when he was released from state custody upon the termination of his parole. 338 F. Supp. 3d at 863-66 (citing, *e.g.*, *DeWalt v. Carter*, 224 F.3d 607, 615-17 & n.5 (7th Cir. 2000)). Because the limitations period for § 1983 claims in Illinois is two years, *see Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008), this court dismissed Savory's § 1983 claims—which he did not file until January 11, 2017—as time-barred. 338 F. Supp. 3d at 862-66. The Seventh Circuit reversed, ruling that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 947 F.3d at 415 (quoting

6

*Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994)). Thus, as a general matter, Savory's claims accrued only when the Governor pardoned him on January 12, 2015, just under two years before he filed suit. *Id*. at 417-18, 431.

The "as a general matter" hedge in the preceding sentence reflects that the Seventh Circuit expressly left open for this court's consideration three questions that might possibly result in a different accrual date for some of Savory's claims. The first question concerns when Count III—which, as noted, alleges malicious prosecution and wrongful pretrial detention under the Fourth and Fourteenth Amendments—accrued insofar as it states an otherwise viable cause of action. *Id*. at 412 n.2. As the Seventh Circuit observed, *ibid*., answering that question requires attention to *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), and its own opinion on remand from that decision, *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018). The second question concerns whether there are two accrual dates for Savory's claims—one in April 1980, when the state appellate court reversed Savory's convictions at his first trial, and the other in January 2015, when the Governor pardoned him for the convictions at his second trial—or just one accrual date, the day of the pardon. 947 F.3d at 416 n.3. As the Seventh Circuit observed, *ibid*., answering that question requires consideration of whether *McDonough v. Smith*, 139 S. Ct. 2149 (2019), overruled in pertinent part *Johnson v. Winstead*, 900 F.3d 428 (7th Cir. 2018). The third question, related to the first, is whether "*McDonough* dictates—contrary to [the Seventh Circuit's] 2018 *Manuel* opinion—that [Savory's] claim for unlawful detention after legal process accrued at the same time as all of his other claims, specifically at the time of his pardon." 947 F.3d at 416 n.4.

### A. Fifth Amendment Coerced Confession Claim

Savory's Fifth Amendment claim alleges that the officers coerced him "to incriminate himself involuntarily, falsely, and against his will," with the false confession "used against [him]

7

to his detriment throughout his criminal case," in violation of his right to be free from compulsory self-incrimination. Doc. 1 at ¶¶ 89, 91. As Savory sees it, the claim is timely because it was filed within two years of his pardon. Doc. 137 at 15-16. As Defendants see it, the claim is timely only as to the injuries caused by the convictions entered at the second trial, Doc. 149 at 4 n.4, not as to the injuries caused by the convictions at the first trial. The reason, Defendants assert, is that the claim accrued for purposes of the convictions entered at the first trial in April 1980, when the state appellate court reversed those convictions. Doc. 128 at 12-13.

Defendants' position faithfully applies *Johnson v. Winstead*. The plaintiff in *Johnson* brought a Fifth Amendment coerced confession claim based on the use of his incriminating statements at two trials—both of which ended in convictions that were reversed on appeal. 900 F.3d at 439. The Seventh Circuit held that the claim had two accrual dates, one at the favorable termination (appellate reversal) of the first conviction, and the second at the favorable termination (another appellate reversal) of the second conviction. *Ibid*. Thus, under *Johnson*, Savory's Fifth Amendment claim must be split in two, with the first part (the one arising from the conviction at his first trial) accruing in April 1980 and thus time-barred.

As the Seventh Circuit noted, the question here is whether *McDonough v. Smith* overruled *Johnson* in this respect. It did. *McDonough* held that *Heck* barred a plaintiff whose first trial ended in a mistrial, and who was then retried and acquitted, from bringing a fabricated evidence claim until "the underlying criminal proceedings ha[d] resolved in [his] favor," meaning until his acquittal—which in turn means that the claim did not accrue until that time. 139 S. Ct. at 2156. To support its holding, the Supreme Court invoked "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *Id*. at 2157. The Court explained that

8

the contrary result would impose upon "[a] significant number of criminal defendants … an untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them," adding that "the parallel civil litigation that would result if plaintiffs chose the second option would run counter to core principles of federalism, comity, consistency, and judicial economy." *Id*. at 2158.

The dual-accrual rule of *Johnson* cannot be reconciled with the Supreme Court's analysis in *McDonough*, at least under the circumstances of this case. Because the State elected to re-try him after the state appellate court's April 1980 reversal of the convictions entered at his first trial, Savory remained fully subject to pending criminal charges. Those are precisely the circumstances in which, according to *McDonough*, a § 1983 claim has not yet accrued— circumstances where, if the claim had accrued in April 1980, Savory would have been compelled to bring parallel civil litigation involving the facts of his criminal case against the very persons who were the moving force behind his continued prosecution, and where there would have been a risk of conflicting judgments if Savory prevailed in the civil case and the State prevailed in the criminal case. After all, if Savory in a civil case proved by a preponderance of the evidence that the officers violated the Fifth Amendment by coercing him to "falsely" confess to the murders, Doc. 1 at ¶ 89, then he could not have been found guilty in his criminal case, certainly not beyond a reasonable doubt, of committing the same murders. *See McDonough*, 139 S. Ct. at 2156 (holding that a claim "challeng[ing] the integrity of [the] criminal prosecution[]" cannot accrue until the prosecution terminates in the defendant's favor); *id*. at 2159 (same for a claim that "directly challenges—and thus necessarily threatens to impugn—the prosecution itself"). It follows that Savory's Fifth Amendment coerced confession claim accrued only once, when he received his pardon, because only then did the criminal proceedings fully resolve in his favor.

9

In sum, Savory's Fifth Amendment coerced confession claim is timely in its entirety, having been filed within two years of his pardon that, after nearly four decades, terminated the criminal proceedings in his favor.

### B.    Fourteenth Amendment Coerced Confession Claim

Savory's Fourteenth Amendment claim alleges that the officers violated his substantive due process rights by using "psychological and physical coercion" to obtain his confession. Doc. 1 at ¶¶ 94-98. Defendants' "two accrual date" challenge to the claim, Doc. 128 at 16, fails for the reasons set forth above. (That challenge likewise fails as to Savory's other § 1983 claims.) Defendants also argue that the claim is untimely because it never was subject to a *Heck* bar and thus accrued when Savory confessed in 1977. *Ibid*. And they argue as well that the officers' alleged conduct does not rise to the "shocking the conscience" level required to make out a substantive due process claim. *Id*. at 16-18.

Defendants' first argument presents the difficult question whether *Moore v. Burge*, 771 F.3d 444 (7th Cir. 2014), which holds that "claims based on out-of-court events, such as gathering of evidence, accrue as soon as the constitutional violation occurs," *id*. at 446, survived *McDonough*, which holds that the *Heck* bar applies when a claim, as pleaded, would necessarily imply the invalidity of criminal proceedings or a conviction, *see* 139 S. Ct. at 2156-57 (looking to the "essential[]" features of the plaintiff's fabricated evidence claim and the extent to which litigating that claim posed the risk of parallel criminal and civil litigation and conflicting judgments). *Cf. Johnson*, 900 F.3d at 437-38 (pre-*McDonough* decision noting that the approach to *Heck* taken in *Moore* was inconsistent with the approach taken in *Matz v. Klotka*, 769 F.3d 517, 530-31 (7th Cir. 2014), and *Hill v. Murphy*, 785 F.3d 242, 246-47 (7th Cir. 2015)). And Defendants' second argument presents difficult questions about how to determine whether wrongful conduct rises to the level of conscience-shocking conduct for purposes of a substantive

10

due process claim. *See Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) (observing that "[t]here is no clear-cut analysis to determine what constitutes conscience-shocking conduct") (internal quotation marks omitted). Because discovery on the Fourteenth Amendment coerced confession claim will be no broader than discovery on the Fifth Amendment claim, there is no need to run to ground those two challenges to the Fourteenth Amendment claim at this stage. Defendants of course may renew those challenges at summary judgment.

### III.    Unlawful Detention and Malicious Prosecution Claims (Count III)

Count III alleges that the officers unlawfully detained and maliciously prosecuted Savory without probable cause, in violation of the Fourth and Fourteenth Amendments. Doc. 1 at ¶¶ 99-103. These claims are premised on Savory's allegations that he committed no crime, *id.* at ¶¶ 72-77, that the officers "knew [he] was innocent," *id.* at ¶ 100, and that he "never would have been arrested, indicted, prosecuted, or convicted" "[w]ithout [his] false confession, and without Defendants' fabrication, manufacture, suppression, and destruction of evidence," *id.* at ¶ 77.

Defendants correctly contend that no malicious prosecution claim may be grounded in the federal constitution or pursued under § 1983. Doc. 128 at 18. As the Seventh Circuit has made clear, "when a plaintiff alleges that officials held him in custody before trial without justification, '[m]alicious prosecution is the wrong characterization. There is only a Fourth Amendment claim—the absence of probable cause that would justify the detention.'" *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) (quoting *Manuel*, 903 F.3d at 670); *see also Anderson v. City of Rockford*, 932 F.3d 494, 512 (7th Cir. 2019) (same). The § 1983 malicious prosecution claim accordingly is dismissed with prejudice.

As for the Fourth Amendment unlawful detention claim, Defendants contend that it is untimely, having accrued, at the latest, when Savory's pretrial detention ended in May 1981 upon his second conviction. Doc. 128 at 19. In support, Defendants rely on the Seventh

11

Circuit's decision on remand in *Manuel*, which held that a pretrial detention claim accrues "when the detention ends." 903 F.3d at 670. Defendants could just as well have argued that Savory's unlawful detention claim accrued when he was released from prison in December 2006, or from parole in December 2011. Savory contends that *McDonough* compels the conclusion that his unlawful detention claim accrued only when he was pardoned. Doc. 137 at 19-20.

Savory is correct. As noted, *McDonough* makes clear that a plaintiff must wait until the favorable termination of the criminal proceedings to bring a § 1983 claim that, if successful, would be incompatible with his guilt. *See* 139 S. Ct. at 2156-57. That describes Savory's unlawful detention claim, for his allegation that he was detained without probable cause and "in spite of the fact that [the officers] knew [he] was innocent," Doc. 1 at ¶ 100, "challenge[s] the integrity of [the] criminal prosecution[]" and "directly challenges—and thus necessarily threatens to impugn—the prosecution itself," *McDonough*, 139 S. Ct. at 2156, 2159. Because Savory's unlawful detention claim did not accrue until his pardon, it is timely. *See Sanders v. St. Joseph Cnty.*, 806 F. App'x 481, 484 n.2 (7th Cir. 2020) (recognizing that an unlawful detention claim "that impl[ies] the invalidity of an ongoing criminal proceeding or a prior criminal conviction" is *Heck*-barred even "after [the plaintiff's] release and until either those proceedings terminated in his favor or the conviction was vacated"); *Culp v. Flores*, 454 F. Supp. 3d 764, 769 (N.D. Ill. 2020) (same).

### IV.A. Thirteenth Amendment Involuntary Servitude Claim (Count IV)

Count IV alleges that the officers' "misconduct directly resulted in the undue conviction of [Savory] and resulted in years of involuntary servitude, thereby denying [Savory] his constitutional rights guaranteed by the Thirteenth Amendment." Doc. 1 at ¶ 111. Defendants argue that Savory fails to state a Thirteenth Amendment claim. Doc. 128 at 20-21.

The Thirteenth Amendment provides, in pertinent part: "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. By its express terms, the Amendment does not apply to persons "duly convicted" of a crime. *See Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999) ("The Thirteenth Amendment, which forbids involuntary servitude, has an express exception for persons imprisoned pursuant to conviction for crime."). Savory contends that he was not "duly convicted" because "Defendants' invention of false evidence was the sole basis of his conviction." Doc. 137 at 22.

While Savory's position has intuitive appeal, no court has adopted it. To the contrary, the consensus holds that the Thirteenth Amendment is not implicated "where a prisoner is incarcerated pursuant to a presumptively valid judgment … even though the conviction may be subsequently reversed." *Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983) (citing cases); *accord, e.g.*, *Tourscher v. McCullough*, 184 F.3d 236, 240-42 (3d Cir. 1999); *Perrault v. State*, 2016 WL 126918, at *3 (W.D. Wis. Jan. 11, 2016), *aff'd sub nom. Perrault v. Wis. Dep't of Corr.*, 669 F. App'x 302 (7th Cir. 2016); *Rivera v. Carroll*, 2009 WL 2365240, at *9 (S.D.N.Y. Aug. 3, 2009). Savory's Thirteenth Amendment claim accordingly is dismissed.

### IV.B.   Fourteenth Amendment Wrongful Conviction Claim (Count IV)

Count IV also alleges that the officers' alleged withholding, destruction, and fabrication of evidence violated Savory's Fourteenth Amendment due process rights. Doc. 1 at ¶¶ 106-110. Defendants challenge this portion of Count IV only on group pleading and shotgun pleading grounds, which fail to persuade for the reasons stated above. Doc. 128 at 20 n.7 (conceding that the Fourteenth Amendment claim "sufficiently allege[s] withholding, fabricating[,] or destroying evidence"). That portion of Count IV may proceed.

## V. Failure to Intervene Claim (Count V)

Count V alleges that the officers failed to intervene in their colleagues' violations of Savory's constitutional rights. Doc. 1 at ¶¶ 114-118. Defendants contend that this count may not proceed insofar as Savory's underlying constitutional claims are dismissed. Doc. 128 at 21-22. Defendants are correct. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Accordingly, Count V is dismissed insofar as it rests on a Thirteenth Amendment claim or a Fourteenth Amendment malicious prosecution claim.

## VI. *Monell* Claim (Count VI)

Count VI alleges that the City's unlawful policies, practices, and customs led to Savory's wrongful prosecution, conviction, and imprisonment. Doc. 1 at ¶¶ 119-130. Defendants contend that Savory fails to allege a viable *Monell* claim. Doc. 128 at 22-25.

A municipality may not be held derivatively liable for the constitutional violations of its employees under a *respondeat superior* theory. *See Monell*, 436 U.S. at 691. To state a § 1983 claim against a municipality, a plaintiff must allege that "a government's policy or custom" is responsible for the constitutional injury, *id.* at 694, meaning that the municipality, "through its *deliberate* conduct … was the 'moving force' behind the injury alleged," *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("An unconstitutional policy can include both implicit policies as well as a gap in expressed policies."). *Monell* liability may be based on failure to train officers, but only where "the failure

14

to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Savory presses each of these theories of *Monell* liability. Doc. 1 at ¶¶ 121-122 (gaps in express policies); *id*. at ¶¶ 123-125, 127-128 (widespread practice or custom); *id*. at ¶¶ 129-130 (actions of final policymakers); *id*. at ¶ 126 (failure to train and supervise officers). A plaintiff must allege facts adequate under only one theory for a *Monell* claim to survive a motion to dismiss, and because Savory's allegations satisfy the "widespread practice" theory, there is no need to consider the others at this juncture.

To bring about *Monell* liability under a "widespread practice or custom" theory, a municipality's employees' conduct must occur frequently enough to give rise to a reasonable inference that the municipality is "aware that public employees engage in the practice and do so with impunity." *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988) (internal quotation marks omitted). Although there are no "bright-line rules" concerning how often the offending conduct must occur to rise to the level of a custom, "there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020); *see also Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003) ("[P]roof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference.").

Contrary to Defendants' submission, Doc. 128 at 24-25, Savory has alleged facts giving rise to a reasonable inference that the alleged constitutional violations were not isolated occurrences or random events. The complaint alleges in detail that the City looked the other way in the face of an entrenched pattern of unconstitutional conduct. Doc. 1 at ¶¶ 123-124 (widespread practice of coerced confessions); *id*. at ¶ 125 (widespread practice of fabrication and

15

destruction of evidence, falsification of witness testimony, and failure to maintain and disclose investigative files to prosecutors and criminal defendants). Among other things, Savory alleges:

> [A]t all relevant times and for a period of time prior thereto, there existed a widespread practice and custom among officers, employees, and agents of the City of Peoria, under which criminal suspects, including juvenile suspects, were coerced to involuntarily implicate themselves by various means, including but not limited to one or more of the following: (1) individuals were subjected to unreasonably long and uninterrupted interrogations, often lasting for many hours and even days; (2) individuals were subjected to actual and threatened physical or psychological violence; (3) individuals were interrogated at length without proper protection of their constitutional right to remain silent; (4) individuals were forced to sign or asset [sic] to oral and written statements fabricated by the police; (5) officers and employees were permitted to lead or participate in interrogations without proper training and without knowledge of the safeguards necessary to ensure that individuals were not subjected to abusive conditions and did not confess involuntarily and/or falsely; and (6) supervisors with knowledge of permissible and impermissible interrogation techniques did not properly supervise or discipline police officers and employees such that the coercive interrogations continued unchecked.

*Id.* at ¶ 124. And the complaint identifies several criminal defendants who allegedly were subject to misconduct at the hands of Peoria police officers similar to the misconduct alleged by Savory. *Id.* at ¶ 128. Those allegations are enough to survive a motion to dismiss. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (recognizing that, "[a]t the pleading stage," a plaintiff pursuing a widespread practice theory of *Monell* liability need only "allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom").

In pressing the contrary result, the City cites *Starks v. City of Waukegan*, 946 F. Supp. 2d 780 (N.D. Ill. 2013), which dismissed a policy-or-practice *Monell* claim on the pleadings. Doc. 128 at 23-24. In *Starks*, as here, the plaintiff alleged that he was wrongfully convicted as a result of widespread unconstitutional conduct by municipal police officers. *See* 946 F. Supp. 2d at 791-92. But in contrast to Savory's detailed allegations of a pattern of violations, the allegations

16

in *Starks* were devoid of any factual support. *See id*. at 791 (observing that the plaintiff alleged, without more, a *de facto* policy of "coercing and fabricating false and inculpatory statements from suspects and witnesses"). So even if *Starks* were precedential, which it is not, the decision is distinguishable.

Savory's complaint also succeeds in alleging causation. It is plausible, based on Savory's detailed allegations regarding the practices and history of the Peoria police department, that the officers "acted pursuant to one or more of the [City's] policies, practices, and customs" in coercing his confession and framing him for the murders, and therefore that the policies, practices, and customs "directly and proximately caused" his injuries. Doc. 1 at ¶¶ 120, 130; *see First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) ("To satisfy [*Monell*'s causation] standard, the plaintiff must show a direct causal link between the challenged municipal action and the violation of his constitutional rights.") (internal quotation marks omitted).

Accordingly, Savory's *Monell* claim survives dismissal.

### VII.     *Respondeat Superior* and Indemnification Claims (Counts X and XI)

Savory's *respondeat superior* claim alleges that the City "is liable as principal for all torts committed by" the officers. Doc. 1 at ¶¶ 145-147. This claim is dismissed because (1) the state law claims to which *respondeat superior* liability could attach have been dismissed and (2) there is no *respondeat superior* liability under § 1983.

Savory's indemnification claim alleges that the City must "pay any tort judgment for compensatory damages" entered against the individual officers. *Id*. at ¶¶ 148-151 (citing 745 ILCS 10/9-102). This claim survives along with the surviving § 1983 claims against the officers. *See Wilson v. City of Chicago*, 120 F.3d 681, 683, 685-87 (7th Cir. 1997) (recognizing that 745

ILCS 10/9-102 covers § 1983 damages imposed on individual public employees); *Spencer v. Pistorius*, 605 F. App'x 559, 561 (7th Cir. 2015) (same).

## Conclusion

Defendants' motion to dismiss is granted in part and denied in part. The motion is granted as to the Fourteenth Amendment malicious prosecution claim, the Thirteenth Amendment claim, and the *respondeat superior* claim. Those claims are dismissed with prejudice because any amendment would be futile. The motion also is granted, with prejudice, as to the portions of the failure to intervene and indemnification claims that rest on the dismissed federal claims. The motion is denied in all other respects. Defendants shall answer the surviving portions of the complaint by April 21, 2021.

March 31, 2021

_____
United States District Judge