IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNIE LEE SAVORY, | ) | |
| | ) | Case No. 17 C 204 |
| *Plaintiff*, | ) | |
| | ) | Hon. Gary Feinerman, |
| v. | ) | District Judge |
| | ) | |
| WILLIAM CANNON, as Administrator for the Estate of CHARLES CANNON, *et al.*, | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendants*. | | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT CITY OF PEORIA'S MOTION TO BIFURCATE AND STAY
DISCOVERY OF PLAINTIFF's *MONNELL* CLAIMS**

Plaintiff JOHNNIE LEE SAVORY, by and through his attorneys, responds in opposition to the motion by Defendant City of Peoria to bifurcate and stay discovery of Plaintiff's *Monell* claims.

I.  **Introduction**

Defendant asks the court to take the unusual course of essentially bifurcating both trial and discovery of the Plaintiff's *Monell* claim against the City of Peoria from its claims against the individual Defendants. *See Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000) ("The piecemeal trial of separate issues in a single lawsuit is not to be the usual course."). First, the City's argument that bifurcation is necessary to avoid prejudice to Defendants is incorrect and is also no reason to bifurcate discovery at this stage. The City identifies no real prejudice it will suffer. With respect to the individuals, most of the *Monell* evidence is admissible against them at trial without any danger of unfair prejudice. Moreover, any concern that they might be prejudiced can be managed with limiting instructions. And even if there were

some danger of unfair prejudice, it would not justify bifurcation at the start of discovery. On the other hand, Plaintiff would suffer great prejudice if the City's motion were granted, and that prejudice must be considered. Plaintiff will be prejudiced by bifurcation as it would inhibit his critical non-monetary interest in the *Monell* claims: ensuring that meaningful reform takes place.

Second, bifurcation will not save time or resources, and Defendant's complaint about the scope of discovery is more appropriately addressed under Federal Rule of Civil Procedure 37. Defendant's primary reason for bifurcation appears to be its desire to avoid discovery into 50 years of its policies. Dckt. No. 186 at 2. However, bifurcation will not prevent discovery into the City of Peoria's policies and procedures as they are still relevant to Plaintiff's claims against the individual defendants. *See e.g., Andersen v. City of Chicago*, 1:16CV1963, Dkt. 686, N.D. Ill. Nov. 17, 2020. Moreover, as is usual with discovery requests in civil litigation, Plaintiff of course will discuss narrowing the scope of discovery into policy and procedure as discovery proceeds. Further, bifurcation will not promote judicial economy as it will likely lead to repeated disputes about the discoverability of evidence on policy and procedures and will duplicate the Court's efforts related to this topic as the *Monell* claim will proceed after litigation of the claims against the individual Defendants.

Third, the City's position cannot be adopted because it violates the Seventh Amendment. The City proposes that the Court would oversee discovery, decide dispositive motions, oversee a trial against individual Defendants, and then reopen *Monell* discovery, entertain a new round of dispositive motions, and hold a second trial in each case. But two trials will necessarily require two separate juries to consider the same factual issues. The Seventh Amendment forbids that approach. For all of these reasons, this Court should deny the Defendant's Motion to bifurcate and allow discovery to continue forward.

## II. Background

Plaintiff filed his complaint against the City of Peoria and the individual Defendants on January 1, 2017. Dkt. 1. The parties first created a joint discovery schedule in March 2017. Dkt. 81. Plaintiff alleges that the Defendants violated his constitutional rights by coercing a false confession from him when he was 14-years-old, withholding exculpatory evidence, fabricating and soliciting false evidence, destroying evidence, failing to intervene, and maliciously prosecuting Plaintiff.

Several of the individual Defendants in this case have passed away, *see* Dkt. 29-31, 37, and Defendants have asserted in their responses to deposition scheduling requests that three more individual Defendants are in their 90s and may have trouble with their memories. Despite Plaintiff's repeated requests to begin Defendants' depositions in this case, none have taken place and none are definitively scheduled.

As to the City of Peoria, Plaintiff alleges the City failed to promulgate proper or adequate rules, regulations, policies, and procedures for 1) the interrogation of criminal suspects including juveniles; 2) the collection, documentation, preservation, testing, and disclosure of evidence; 3) the writing of police reports and investigation notes; 4) the process for obtaining statements from witnesses; and 5) the maintenance of investigative files and the disclosure of those files. *See* Dkt. 1 at ¶¶ 119 -130. Plaintiff alleges that this widespread policy and custom allowed people suspected of crimes, such as Plaintiff, to be routinely coerced into implicating themselves in crimes they did not commit. *Id.* at ¶ 123. This practice included prolonged interrogations, actual and threatened violence, lack of protection of the rights to remain silent, forced adoption of false and self-incriminating statements, and interrogations by untrained and improperly supervised individuals. *Id*. at ¶ 124. Defendants moved to dismiss the *Monell* claims arguing that

Plaintiff had not plead a valid *Monell* claim. Dkt. 128 at 18. This Court declined to dismiss those claims finding that Plaintiff had sufficiently plead *Monell* claims against the City of Peoria, and this court has allowed those claims to proceed. Dkt. 171 at 15-17.

Plaintiff first issued discovery into the City of Peoria's policy and procedures in 2017. Plaintiff asked the City of Peoria to produce documents related to its policies, procedures, and training for police officers. On October 26, 2020, the City of Peoria objected to this request stating that the parties would need to have a Rule 37.2 conference related to the scope of this discovery. See Exhibit 1 at 11-12. The parties had a discovery conference on March 12, 2021. Dkt. 186-5 at 1. Defendants have agreed to produce policies from 1971 to 1982. Dkt. 186-5 at 5. Plaintiff has not received any policy or training documents from the City of Peoria.

### III.   Legal Standard

Federal Rule of Civil Procedure 42(b) provides "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues[or] claims . . ." This rule "is read in light of the overarching policy principle behind the Federal Rules, which seeks the just, speedy, and inexpensive resolution of every trial. Accordingly, because bifurcation risks additional delay, it has remained the exception and not the rule." *A.L. Hansen Mfg. Co. v. Bauer Products, Inc.,* 2004 WL 1125911, at *2 (N.D. Ill. 2004); *Awalt v. Marketti,* 2012 WL 1161500, at *10 n.2 (N.D. Ill. 2012) ("The Court has looked at every decision in this District involving bifurcation of *Monell* claims . . . since the Seventh Circuit decided *Thomas v. Cook County Sheriff's Dep't*. It is clear that the weight of authority holds that bifurcation is now heavily disfavored.") (internal citations omitted).

Indeed, in the past six years, federal courts throughout Illinois have continued to deny motions to bifurcate. *See, e.g., Golbert v. Aurora Chicago Lakeshore Hospital LLC,* 1:19 CV

4

08257, Dkt. 275 (N.D. Ill. April 22, 2021); *Bachelor v. City of Chicago,* 18 CV 08513, Dkt. 179 (N.D. Ill. March 4, 2021); *Bouto v. Guevara, 19 CV 2441,* Dkt. 105 (N.D. Ill. Feb. 11, 2020); *Rodriguez v. Chicago*, No. 18 C7951, Dkt. 51 (N.D. Ill. Sept. 10, 2019); *Gomez v. Guevara*, 1:18 CV 03335, Dkt. 65 (N.D. Ill. Apr. 8, 2019), *Baskins v. Gilmore*, 17 C7566, Dkt. 135 (N.D. Ill. Mar. 25, 2019); *McIntosh v. Chicago*, 17 C 6357, Dkt. 101 (N.D. Ill. Feb. 13, 2019); *Brent-Bell v. Chicago*, 17 C 1099, Dkt. 140 (N.D. Ill. Feb. 5, 2019); *Prince v. Kato*, 18 C 2952, Dkt. 65 (N.D. Ill. Nov. 14, 2018); *Sierra v. Guevara*, No. 18 C 3029, Dkt. 84 (N.D. Ill. Nov. 7, 2018); *Smith v. Burge*, No. 16 C 3404, Dkt. 205 (N.D. Ill. Aug. 9, 2018); *Rivera v. Guevara*, No. 12 C 4428, Dkt. 443 (N.D. Ill. May 18, 2018); *Hood v. Chicago*, No. 16 C 1970, Dkt. 86 (N.D. Ill. Jan. 9, 2017); *Coleman v. City of Peoria*, No. 15 C 1100, Dkt. 86 (C.D. Ill. Sep. 27, 2016); *Cadle v. City of Chicago*, No. 15 C 4725, Dkt. 39 (N.D. Ill. Nov. 2, 2015); *Glaze v. City of Chicago*, No. 14 C 3120, Dkt. 52 (N.D. Ill. Sep. 19, 2014).

### IV.    Argument

#### A.  Individual Liability Is Not a Predicate to Municipal Liability

*Monell* claims require a finding of a constitutional violations, but not necessarily a finding that a named individual Defendants is liable for that underlying constitutional violation. *See, e.g., Gomez v. Guevara,* No. 18-cv-03335, Dkt. 65 at 6 (N.D. Ill. Apr. 8, 2019) ("[C]ourts in this district have recognized that . . . the City may be liable for *Monell* claims without a finding that individual officers engaged in misconduct"). Contrary to Defendant's assertion, *Thomas v. Cook County*, 604 F.3d 293 (7th Cir. 2010), did not articulate any "exceptions" to any rule. In *Thomas*, the Seventh Circuit merely restated the noncontroversial proposition that a municipality could be held liable under *Monell* absent a finding of liability against individual municipal

5

employees so long as the two verdicts were not inconsistent. 604 F.3d at 305. This case presents a classic example of how such a situation could arise.

First, all of the individual Defendant officers have asserted qualified immunity, Dkt. 172 at 44, a defense that is not available to Defendant Peoria. The individual Defendants could assert a qualified immunity defense without foreclosing Plaintiff's claim that Peoria was liable for violation of Plaintiff's rights. *See Thomas*, 604 F.3d at 305; *Bell v. City of Chicago*, 09 C 4537, 2010 WL 432310, at *3 (N.D. Ill. Feb 3, 2010) (denying a motion for bifurcation on this basis); *Martinez v. Cook County*, 11 C 1794, 2011 WL 4686438, at *1-2 (N.D. Ill. Oct. 4, 2011) (same); *Cage v. City of Chicago*, 09 C 3078, 2010 WL 3613981, at *2 (N.D. Ill. Sep. 8, 2010) (same); *Bradley v. City of Chicago*, 09 C 4538, 2010 WL 432313, at *3 (N.D. Ill. Feb. 3, 2010). While Plaintiff remains confident that qualified immunity is inapplicable here, the Defendants contend otherwise. It is not out of the question that Plaintiff could prove that one of the individual Defendants violated his constitutional rights but not obtain a verdict against him because that defendant is entitled to qualified immunity. In that case, Plaintiff could still prevail on that constitutional violation if he can show that a municipal policy or custom was the moving force behind that violation.

Second, Plaintiff can prevail on his *Monell* claim if he shows that an employee violated his constitutional rights and that a Peoria Police Department policy or procedure was the impetus for that violation, even if he cannot show that the employee is one of the individual Defendants. *Thomas*, 604 F.3d at 305. This is especially true when Plaintiff has alleged that there were conspiracies among the individual Defendants and possibly others to violate his constitutional rights. Plaintiff's *Monell* claim accounts for the possibility that some yet-to-be identified (or possibly never-to-be identified) agent of the Peoria Police Department was responsible for

6

violating his rights on account of a City policy. *See, e.g.*, *Coleman v. City of Peoria,* No. 1:15 CV 01100, 2016 WL 5497363, at *3 (C.D. Ill. Sept. 27, 2016) ("in some civil-rights cases, a plaintiff alleges harm traceable to the policies of a municipality for which no individual defendant is liable, either because no such defendants are ultimately found to be named, or because no defendant is individually liable for the harm nevertheless worked by the policy."); *Cage*, 2010 WL 3613981, at *2 ("[I]t is possible for a verdict to be returned which holds the City liable for its alleged unconstitutional policies even though Cage is unable to link any individual defendants to the constitutional violation.");

At this point in the litigation, with no depositions completed, Plaintiff cannot say whether he will advance such a theory at trial. Defendants have disclosed nine non-party Peoria Police Department officers as witnesses in this case. Given the fact that Defendants have been very slow in producing any Defendants for depositions, let alone other Peoria Police Department witnesses, Plaintiff cannot foreclose that possibility at this juncture, nor should he be required to do so. As of now, Plaintiff has no way of knowing whether any of the nine Peoria Police Department officer witnesses (to whom Defendants have unilateral access) might potentially fill in the gaps with facts about how the investigation unfolded in ways that implicate other officers. If such facts emerge, then Plaintiff will have to proceed on his *Monell* claim in order to ensure recovery for those officers' conduct; a second trial will be a certainty.

### B. Bifurcation Will Not Promote Judicial Economy and Is Not Necessary to Fairly Manage the Discovery Burden

Defendants' primary argument for bifurcation – that the burden to them to participate in *Monell* discovery is too great – is misleading and lacks merit.

First, the scope of Plaintiff's discovery requests into the City's policies and procedures can be addressed through Rule 37, a path that Defendants have only nominally pursued even

though many of the discovery requests of which they complain were issued in 2017. *See* Dkt. 186 at 10. In fact, in April 2021, the Defendants first asserted its disagreement with the scope of the Plaintiff's policy and procedures request and agreed to produce five years of policy discovery. Dkt. 186-5 at 5. While Defendant also asserted its intent to address this issue by filing a motion to bifurcate at the Rule 37 conference, another Rule 37 discovery conference would be the proper avenue to continue to address the scope of Plaintiff's policy discovery. The parties should explore ways to reduce the burden and cost before asking for intervention of the Court. In the ordinary course of litigation, Courts are not asked to weigh in on burdensomeness objections until the parties have exhausted meet and confer efforts, and no exception should apply here.

Further, Defendants do not give any indication that they have made an actual inquiry into the burden of complying. *Cadle v. City of Chicago, et al.*, No. 15-c-4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015) ("Hyperbolic words used to characterize an unspecified burden are not enough."). While the Defendants contend that Plaintiff is asking for 50 years of policy and procedure documents, Defendants have already agreed to produce the oldest of those documents (presumably the hardest to locate), and it may be that those documents did not change often, certainly not every year, between 1981 and 2015. Defendants' unspecified assertions of burden should, not drive the Court's analysis at this point. *Cadle*, 15 C 4725, at *2 ("To the extent that Plaintiff's *Monell* discovery requests are overly broad or would impose an undue burden or expense, the Court can deal with that in the normal course of resolving any discovery disputes . . . ."); *Carter v. Dart*, 09 C 956, 2011 WL 1466599, at *5 (N.D. Ill. Apr. 18, 2011) (same); *Cadiz v. Kruger*, 06 C 5463, 2007 WL 4293976, at *3 (N.D. Ill. Nov. 29, 2007) (same).

Second, while Defendant appears to contend that policy and procedure discovery is synonymous with *Monell* discovery, that is not so. Policy and procedure discovery is required for

8

all of Plaintiff's claims of constitutional violations including those against the individual Defendants. *See e.g., Andersen v. City of Chicago*, 1:16CV1963, Dkt. 686 (N.D. Ill. Nov. 17, 2020) (ruling that evidence of the City of Chicago practice and policy was relevant for trial even when the *Monell* claims had been bifurcated). Plaintiff will require much of the same discovery even if his *Monell* claim is bifurcated. Discovery into policy and procedure will be needed for impeachment purposes. Even more, given the age of the case and the fact that many of the Defendants are deceased, and several more are asserting that they cannot sit for depositions due to age, it is likely that when individual Defendants do testify, they may claim that they have no knowledge of the underlying facts of the case apart from their written reports and usual practices.

In an analogous case involving the same type of constitutional violations arising from actions of the Peoria Police Department in 1994, the District Court found that the age of the case weighed against bifurcation. *Coleman,* 2016 WL 5497363, at *5 (C.D. Ill. Sept. 27, 2016) (a "major reason why separation is inappropriate at this phase of the proceedings is the unusual complexity and age of this case."). The Court explained that when major players in the misconduct are deceased and therefore unavailable for depositions, the remaining participants may be more likely to receive qualified immunity. *Id.* "[T]he perishability of human memory" also makes it more difficult for a Plaintiff to recover without a *Monell* claim and discovery into policy and procedure for all of the claims. *Id.* ("As particular facts have staled or receded from the memories of the principles, the claims against them as individuals have become less susceptible of proof, rendering the *Monell* claim relatively more viable and attractive to Coleman, relying as it does not on a requirement that any of the particular defendants be able to be shown to have had a certain state of mind at a particular time, or have taken particular actions,

9

but rather on a broader showing that as a result of the City's policies and procedures, Coleman was deprived of his right to due process of law.").

Third, as in *Coleman,* there is significant overlap between the discovery needed for the claims against the individual Defendants and the *Monell* claims. *Id.* Policy and procedure discovery is needed for both parts of the case. For that reason, there is little efficiency to be gained by drawing a line between *Monell* and non-*Monell* discovery. In fact, attempting to parse out and stay *Monell* discovery will lead to unnecessary discovery disputes about whether particular evidence constitutes solely *Monell* discovery, another factor weighing against bifurcation. *See Ott v. City of Milwaukee*, 09 C 870, 2010 WL 5095305, at *5 (E.D. Wis. Dec. 8, 2010) (finding it "likely that bifurcating discovery in this case will lead to more disputes as to whether certain discovery requests relate to the permissible individual claims or the impermissible *Monell* claims"); *Terry v. Cook County Dept. of Corrections*, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010) (same).

In light of this overlap, it would be wasteful to attempt to litigate these claims separately. Facts relating to the claims against the individual defendants overlap with facts relating to Plaintiff's *Monell* claims. It is plain based on the facts of this case that no efficiency will be gained by litigating these claims separately. For example, two trips to the witness stand by the same witnesses would not be efficient. This is especially true when this case is before a Judge seated in Chicago and most witnesses are located about 150 miles away in Peoria. Two trials would be an enormous waste of resources, not only for the Court, but also for the many non-party witnesses who will have to appear twice (and will testify about Peoria Police Department policies and customs in both instances anyway). Courts have denied bifurcation on these types of efficiency grounds alone. *See, e.g.*, *Bell*, 2010 WL 432310, at *4 (concluding that "[s]uch a result

would excessively prolong th[e] case and would not serve judicial economy"); *see also Houskins v. Sheahan*, 549 F.3d 480, 496 (7th Cir. 2008) (affirming a district court's decision not to sever claims against two defendants because those claims clearly entailed "an overlap in the facts, evidence, and witnesses required"); *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 870 (7th Cir. 1994) (recognizing that when evidence overlaps substantially, the normal procedure is to try claims together). The obvious solution here is to follow the usual rule permitting discovery and trial to proceed simultaneously on all claims.

    **C. Litigating the Individual Defendant and Monell Claims Together Will Not Unfairly Prejudice Any of the Defendants**

The Defendants argue that without bifurcation Defendants will be prejudiced because a jury could conclude, for example, that if an individual Defendant improperly interrogated Plaintiff, the City must have failed to establish proper training and supervision of all officers related to interrogation, and vice versa, if the jury found the City had improper training and rules related to interrogation, it could infer that a Defendant improperly interrogated Plaintiff. Dkt. 186 at 11-12 (citing *Veal v. Kachiroubas,* No. 12 C 8342, 2014 WL 321708, at *6 (N.D. 111. Jan. 29, 2014)). The Defendants in *Coleman* made a similar argument which the Court dismissed as "puzzling" because evidence of a citywide policy of police misbehavior would be relevant to claims against an individual Defendant who will likely claim to have acted in conformity with citywide policy. *Coleman,* 2016 WL 5497363, at *6. Defendants have no principled basis for arguing, at this early point in the litigation, that Plaintiff should not be allowed to explore the City's policies and customs, challenge Defendants' assertions about those polices and customs, or talk about them at trial.

Further, all of the City's arguments related to prejudice are related to trial but its motion seeks to bifurcate both trial and discovery. The City has not made any arguments that failure to

11

bifurcate discovery would prejudice any Defendant because no argument is available. *Rodriguez v. City of Chicago*, No. 18-CV-7951, 2019 WL 4278501, at *2 (N.D. Ill. Sept. 10, 2019), *objections overruled,* 429 F. Supp. 3d 537 (N.D. Ill. 2019) ("the City's motion seeks not only to bifurcate the trial, but also stay discovery on all *Monell* claims. The City has not made any arguments why refusing to bifurcate discovery would cause it prejudice, and the Court does not believe it would.").

### D.  Granting the Motion to Bifurcate Would Unfairly Prejudice Plaintiff

Tellingly, while the City argues that bifurcation "eliminates prejudice to Individual Defendants and the City," it does not even argue that bifurcation will not prejudice the Plaintiff. Bifurcation of discovery would cause unnecessary delays that could severely prejudice the Plaintiff given that the underlying facts took place in 1977 and many Defendants are already elderly and deceased. Bifurcation will unnecessarily prolong litigation that has been pending for six years, and it will make the burden of recovery greater by requiring Plaintiff to participate in two trials. This prejudice is particularly unfair given the overlap in the issues. Bifurcation could prevent Plaintiff from making a full financial recovery. Even more, Defendant seems to be attempting relitigate its argument that the *Monell* claims should not move forward. This Court has already ruled that they should.

Additionally, Plaintiff has a profound interest in pursuing his claims with an eye toward institutional reform. *See Rodriguez v. City of Chicago,* No. 18-CV-7951, 2019 WL 4278501, at *2 (N.D. Ill. Sept. 10, 2019), *objections overruled,* 429 F. Supp. 3d 537 (N.D. Ill. 2019) (quoting *Gomez v. Guevara*, 18-cv-3335, Dkt. 65 (N.D. Ill. Apr. 8, 2019) ("a judgment naming the city itself and holding it responsible for its policies may have a greater deterrent effect than a judgment against a police officer that is paid by the city.")) As the Supreme Court has avowed,

"[Section 1983] is designed to provide compensation for injuries arising from the violation of legal duties, and thereby, of course, to deter future violations." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 727 (1999). As this District has recognized, a judgment naming the City itself and holding it responsible for its policies may have a greater deterrent effect than a judgment against a police officer that is paid by the city. *Medina City of Chi.,* 100 F.Supp.2d 893, 896 (N.D. Ill. 2000) ("Deterrence of future misconduct is a proper object of our system of tort liability . . . . Depending on the size of the verdict and the size of the municipality . . . a judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its polices and customs.").

Critically, Courts have recognized that "bifurcation is essentially a means "to achieve a *de facto* dismissal of the *Monell* claim." *Maysonet v. Guevara,* No. 18-CV-2342, 2020 WL 3100840, at *5 (N.D. Ill. June 11, 2020). Like the Court in *Maysonet,* this Court should not "deprive a plaintiff, particularly one who has spent" 30 years in prison – starting at the age 14 - on a conviction that has been vacated by the state courts, a merits determination on a *Monell* claim. *Id.*

### E.  Granting the Motion to Bifurcate Would Violate the Seventh Amendment

In addition, the City's proposal would require two separate trials, in front of two separate juries, which would each consider the same issues. Both juries would be required to consider whether and how each Plaintiff's constitutional rights were violated by the suppression of evidence—the first to assess whether the individual Defendants violated their right to due process, and the second to assess whether the City's policies were the cause. The Seventh Amendment prohibits dividing issues in way that requires a second jury to reexamine an issue

13

decided by the first. *Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *see also Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999); *Castano v. American Tobacco*, 84 F.3d 734, 751 (5th Cir. 1996); 9A FEDERAL PRACTICE AND PROCEDURE § 2391 (2016). The City's proposal would therefore violate the Seventh Amendment as well.

## V.    Conclusion

The City cannot avoid litigation over its role in the misconduct alleged. It is responsible, as much as the other Defendants, for Plaintiffs' wrongful convictions. Plaintiff is entitled to discovery and a trial against the City. The City's motion should be denied.

RESPECTFULLY SUBMITTED,

/s/ Lindsay Hagy

*Attorneys for Plaintiff*

Jon Loevy
Steven Art
Julia Rickert
Megan Pierce
Lindsay Hagy
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
steve@loevy.com

Flint Taylor
Brad Thompson
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0070

Locke Bowman
MACARTHUR JUSTICE CENTER
375 E. Chicago Ave., 8th Floor
Chicago, Illinois 60611
(312) 503-1271