# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOHNNIE LEE SAVORY,                     )
                                        )
            Plaintiff,                  )
                                        )          No. 17 C 204
      v.                                )
                                        )          Judge Sara L. Ellis
WILLIAM CANNON, as                      )
Special Representative for the Estate of )
CHARLES CANNON, et al.,                 )
                                        )
            Defendants.                 )

## <u>OPINION AND ORDER</u>

After serving thirty years in prison for crimes he allegedly did not commit and receiving a pardon from the Governor of Illinois, Plaintiff Johnnie Lee Savory filed this lawsuit under 42 U.S.C. § 1983 against Defendants, including the City of Peoria and over a dozen current and former officers and employees of the Peoria Police Department.  Savory's eleven-count complaint alleges that Defendants coerced his confession, fabricated evidence, destroyed and withheld exculpatory evidence, detained him without probable cause, and committed other violations of federal and state law.  Defendants moved to transfer this case to the Central District of Illinois under 28 U.S.C. § 1404(a) in 2017 and Judge Feinerman denied the motion without prejudice.  Now that fact discovery has ended, Defendants again seek the transfer of this case to the Central District of Illinois, Peoria Division, pursuant to 28 U.S.C. § 1404(a).  Because Defendants have sufficiently demonstrated that the balance of private and public interests favors such a transfer, the Court grants Defendants' motion.

## BACKGROUND[1]

In 1977, as a result of witness interviews, a confession, and other evidence allegedly fabricated by Defendants, the Peoria County State's Attorney's Office charged fourteen-year-old Savory with two murders.  Doc. 1 ¶¶ 5, 24, 27; *see also* Doc. 268-2 ¶¶ D–E; Doc. 268-3.  He hired a private attorney based in Peoria and in the summer of 1977, stood trial in front of a Peoria County jury.  *See, e.g.*, Doc. 268-4 at 16.  That jury convicted Savory of the murders, *People v. Savory*, No. 77 CF 565, 1977 WL 370311 (Ill. Cir. Ct. July 1, 1977), but in 1980, a judge overturned his conviction and suppressed his confession due to *Miranda* violations, *People v. Savory*, 403 N.E.2d 118, 120 (1980).  After a police re-investigation and more court proceedings in Peoria, in 1981, a Peoria judge re-tried Savory in Lake County.  Doc. 1 ¶ 12.  A jury again convicted Savory of the murders.  *Id.* ¶ 1.  Although Savory's 1981 conviction has not been overturned, Illinois Governor Patrick Quinn pardoned him in 2015.  Doc. 268-8.

In 2017, Savory filed this lawsuit in the Northern District of Illinois.  Before discovery commenced, Defendants moved to transfer venue to the Central District of Illinois, home to Peoria.  Doc. 51.  Judge Feinerman, the judge then assigned to the case, denied Defendants' motion to transfer for improper venue with prejudice and denied their motion to transfer pursuant to 28 U.S.C. § 1404(a) without prejudice.  Doc. 67.  After the close of fact discovery, Defendants filed this motion to transfer venue pursuant to § 1404(a).

## ANALYSIS

Section 1404(a) provides that the Court may transfer venue to another district "for the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  For the

---

[1] In addressing Defendants' motion to transfer, the Court may look beyond the pleadings.  *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).  The Court resolves all factual conflicts and draws all reasonable inferences in Savory's favor.  *Harris v. comScore, Inc.*, 825 F. Supp. 2d 924, 926 (N.D. Ill. 2011).

Court to transfer the case under § 1404(a), Defendants must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). Defendants bear the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). The transfer decision is committed to the Court's sound discretion because the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey*, 796 F.2d at 219.

## I.        Convenience of the Parties and Witnesses

The parties do not contest the propriety of venue in this district or in the Central District. The Court therefore turns to whether transfer would serve the convenience of the parties and the witnesses as well as the interest of justice. In evaluating the convenience of the parties and witnesses, the Court considers (1) Savory's choice of forum, (2) the situs of material events, (3) the relative ease of access to proof, (4) the convenience of the parties in litigating in the respective forums, and (5) the convenience of the witnesses. *Sojka v. DirectBuy, Inc.*, No. 12 C 9809, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18, 2014).

### A.        Savory's Choice of Forum

Courts typically give a plaintiff's choice of forum substantial deference, particularly when he lives in the district, as Savory does here. *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999); *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (noting that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," but acknowledging that "[r]arely . . . is

3

not never" (citation omitted) (internal quotation marks omitted)).  The Court's deference decreases "where the plaintiff's chosen forum . . . has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC. v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012); *see also Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 960 (N.D. Ill. 2013) ("[L]ess deference is given when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." (citation omitted) (internal quotation marks omitted)).  As discussed below, although the Northern District of Illinois has some connection to the relevant events, most material events giving rise to Savory's claims occurred in Peoria.  Therefore, the Court accords less weight to Savory's choice of forum.  *See Huon v. Mudge*, No. 11-CV-3050, 2012 WL 426908, at *4 (N.D. Ill. Feb. 9, 2012) ("Because a majority of material events occurred in the Southern District, the Court gives less weight to Plaintiff's choice of forum."); *L. Bull. Publ'g., Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998) (giving "less deference" to plaintiff's "home forum and chosen forum" because another district "[was] the situs of the overwhelming majority of material events," even though "the case [did] have some connection to Illinois").  Still, because at least some material events occurred in the Northern District, this factor weighs slightly against transfer.  *See Moore v. Magiera Diesel Injection Servs., Inc.*, No. 18 C 3762, 2019 WL 2502029, at *3 (N.D. Ill. June 17, 2019) (the plaintiff's choice of forum weighed against transfer because the plaintiff lived in his forum of choice, even where "nearly all material events" occurred in another district).

**B.    Situs of Material Events**

"[T]he location of the material events giving rise to the case . . . becomes comparably more important when it differs from the plaintiff's choice of forum." *Huon*, 2012 WL 426908, at

4

*3.  Defendants contend that the material events occurred in Peoria.  Savory brings claims of coerced confession; deprivation of liberty without probable cause; falsifying witness testimony; fabrication, destruction, and suppression of evidence; and failure to intervene, among others. Defendants argue that every event purportedly giving rise to these claims—the murders, subsequent investigation, witness interviews, interrogation, confession, arrest, evidence collection, pretrial proceedings, 1977 trial, post-trial proceedings for the 1977 trial, and sentencing for the 1977 and 1981 trial—all occurred in Peoria.

Savory responds that several material events occurred in the Northern District: the 1981 trial in Lake County, which included fabricated testimony of the Ivy siblings, witnesses who implicated Savory in the murders; the forensic testing of various pieces of material physical evidence; and nearly half of the thirty years of Savory's incarceration.  Drawing all reasonable inferences in Savory's favor, the Court agrees that these events are material.  *See* Doc. 298-9 at 3–4 (denying Defendants' motion to transfer for lack of improper venue with prejudice because "a substantial part of the events or omissions giving rise to the claim occurred in this district"). However, most material events—including, for example, Defendants' interviews of the Ivy siblings wherein Defendants purportedly pressured or encouraged them to testify falsely— occurred in Peoria.  *See* Doc. 277-7 (police incident reports reflecting that conversations between Defendants and the Ivy siblings occurred in Peoria).  This factor therefore slightly favors transfer.  *See Moore*, 2019 WL 2502029, at *3 (situs of material events factor favored transfer where "all repair work was performed, . . . the offending engine was installed, . . . the purported warranties were given, and the purportedly fraudulently phone calls were placed" in Indiana, even though the plaintiffs' "truck allegedly broke down in Illinois and he received the allegedly fraudulent phone calls there"); *Bullard v. Burlington N. Santa Fe Ry. Co.*, No. 07 C 6883, 2008

WL 4104355, at *2 (N.D. Ill. Aug. 29, 2008) (situs of material events favored transfer, even

where plaintiffs argued that three of their claims arose from the defendants' conduct in Illinois

and that they suffered harm in Illinois, because "lion's share of material events forming the

gravamen of plaintiffs' complaint" took place in another district); *L. Bull. Publ'g., Co.*, 992 F.

Supp. at 1018 (acknowledging that "any injury resulting from" the defendant's conduct "would

have occurred in Illinois," but nevertheless finding that another district "[was] clearly the situs of

the overwhelming majority of the material events" which gave rise to the plaintiff's claims). *But

see Ratliff v. Venture Express, Inc.*, No. 17 C 7214, 2019 WL 1125820, at *10 (N.D. Ill. Mar. 12,

2019) (describing the situs of material events factor as "neutral" where "alleged actions and

omissions occurred in" another district, "but the resulting injury to [plaintiff] occurred in this

District").

## C.    Source of Proof

Turning to source of proof, the ease of access to documents and other evidence does not

weigh heavily either way.  As to documents, while each side claims that its preferred district

contains relevant documents, the parties do not dispute the transferability of these documents

"[i]n this day and age." *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836,

840 (N.D. Ill. 2009) ("In this day and age, transferring documents from one district to another is

commonplace and, given the widespread use of digital imaging in big-case litigation, no more

costly than transferring them across town.").  The Court accords slightly more weight to physical

evidence, which may not be transferred as easily. *See Craik*, 37 F. Supp. 3d at 961 (explaining

that "the location of and ease of access to physical evidence is accorded more weight" than

access to documentary evidence and concluding that "[b]ecause of the overwhelming presence of

both electronic and physical evidence in the Western District of Washington and none to speak

of comparatively in the Northern District of Illinois, this factor weighs in favor of transfer"). Defendants contend that the Peoria County Clerk's Office and Peoria Police Department contain all of the relevant physical evidence in this case.  Still, the Court sees no reason that the evidence cannot be transferred the relatively short distance from the Central District to the Northern District.  Therefore, this factor "favors transfer only slightly," if at all.  *See Cent. States, Se. & Sw. Areas Pension Fund v. DT Leasing, LLC*, No. 19 C 05878, 2021 WL 5321382, at \*5 (N.D. Ill. Nov. 16, 2021) (relative access to sources of proof favored transfer only slightly where physical and documentary evidence existed in the transferee venue).

### D.    Convenience of the Parties

In evaluating the convenience of the parties, the Court considers the parties' residences and their ability to bear the expense of litigating in each forum.  *Brandon Apparel Grp., Inc.*, 42 F. Supp. 2d at 834.  Defendants and Savory both detail the challenges they will face if forced to litigate outside of their preferred district.  Of the twelve living Defendants, ten reside in or around Peoria and none reside in Chicago.  The representatives of the deceased Defendants and, of course, the City of Peoria itself, also reside in or around Peoria.  The twelve living Defendants range from seventy-three to ninety-three years old, and many suffer from severe health impairments, have limited mobility, no longer drive, or reside in assisted living facilities.  Savory responds that out-of-state Defendants will have to travel through Chicago, that the parties' attorneys reside primarily in Chicago, and that he acts as the sole caretaker for his school-aged child.

First, Savory provides no support for his contention that the two out-of-state Defendants, who both have family or a place to stay in Peoria, will have to travel through Chicago.  Peoria

has its own airport,[2] and even if Defendants did travel through Chicago, it might still be more

convenient for them to attend trial in Peoria.  Second, the "convenience and location of counsel

has never been accorded weight in a transfer analysis."  *Hemstreet v. ScanOptics, Inc.*, No. 89 C

5937, 1990 WL 36703, at *4 (N.D. Ill. Mar. 9, 1990); *see also Humphries v. Coppercrest*

*Leveraged Mortg. Fund*, No. 10-cv-7756, 2012 WL 527528, at *4 (N.D. Ill. Feb. 15, 2012)

("[N]either the statute nor the case law identifies the location of counsel as a factor for the

court's consideration in determining whether a case should be transferred under § 1404.").

Finally, even crediting Savory's contention that he acts as the sole caretaker for his child, a

proposition for which he provides no evidentiary support, this factor still weighs slightly in favor

of transfer because "the vast majority of parties," many of whom suffer from impairments that

could preclude travel, "reside in the [Central] District."  *Huon*, 2012 WL 426908, at *4 (finding

that the convenience of parties factor weighed in favor of transfer "despite Plaintiff's

unsupported assertion that he will not be able to afford litigation" in another county).

### E.      Convenience of the Witnesses

The Court therefore turns to the convenience of witnesses, "often viewed as the most

important factor in the transfer balance."  *Brandon Apparel Grp., Inc.*, 42 F. Supp. 2d at 834

(quoting *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)).  The Court considers not

just the number of witnesses located in each forum but also the nature, quality, and importance of

their testimony.  *Id.*  The Court gives less weight to the convenience of party witnesses, whom

the Court presumes would appear voluntarily at trial in either district.  *See AL & PO Corp. v. Am.*

*Healthcare Capital, Inc.*, No. 14 C 1905, 2015 WL 738694, at *4 (N.D. Ill. Feb 19, 2015)

("[T]he convenience of witnesses who are within a party's control, such as a party's employees,

---

[2] The Court may take judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201; *see also* https://www.flypia.com/.

is far less important than the convenience of non-party witnesses.").  "In assessing this factor, courts focus on the nature and quality of the proposed testimony and its relevance to the case." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 932 (N.D. Ill. 2017).

Here, Defendants identify eighteen non-party witnesses; seventeen reside in the Central District and one resides in the Southern District—none reside in the Northern District. Defendants argue that all of the witnesses are material to Savory's claims—they will testify about his alibi, statements he allegedly made to them, their involvement in the criminal investigation, decisions to prosecute, transmission of discovery, and handling of evidence, among other testimony.  Defendants also establish that many of the witnesses are elderly, ill, working, or travel restricted.  In response, Savory identifies three non-party witnesses allegedly material to his case that either reside in Chicago or another state.  However, Savory has not presented the Court with any information as to the content of these witnesses' testimony, why their testimony is material, or "shown that the witnesses . . . would suffer hardship from appearing at trial in nearby" Peoria.  *McGowan v. Camp Agawak, Ltd.*, No. 19-CV-01532, 2020 WL 5848441, at *5 (N.D. Ill. Oct. 1, 2020); *see also Ambrose v. Steelcase, Inc.*, No. 02 C 2753, 2002 WL 1447871, at *4 (N.D. Ill. July 3, 2002) (finding that the convenience of non-party witnesses factor "[c]learly . . . weigh[ed] in favor of transfer" where the defendants identified thirteen potential witnesses in the transferee district and explained their roles, while the plaintiffs said only that transfer would inconvenience their witnesses").  In contrast, Defendants provided details about the nature of their witnesses' testimony, which addresses the heart of Savory's claims "and therefore has the significance that the Court looks to in determining convenience." *Coleman v. Buchheit, Inc.*, No. 03 C 7495, 2004 WL 609369, at *2 (N.D. Ill. Mar. 22, 2004). Moreover, two of Savory's witnesses live out of state, and so "Chicago, as well, will be

9

inconvenient to [Savory's] . . . witnesses." *Ambrose*, 2002 WL 1447871, at \*4 (explaining that Chicago and Grand Rapids would both inconvenience the plaintiff's Boston-area witnesses and finding that in light of the defendants' thirteen potential Grand Rapids witnesses, this factor weighed in favor of transfer). Savory also argues that expert witnesses may be passing through Chicago, but to the extent true, this carries little if any weight in the Court's assessment of the convenience of non-party witnesses. *See Ratliff*, 2019 WL 1125820, at \*11 ("[T]he § 1404 calculus is generally less concerned about the burden that appearing at trial might impose on witnesses who are . . . paid experts because it is presumed that such witnesses will appear voluntarily.").

Savory next contends that three of Defendants' witnesses will not likely appear at trial—two, who completed their depositions via video, because of health restrictions and one because the parties have purportedly agreed to present her testimony through stipulation. First, this argument fails to address the remainder of Defendants' witness list.[3] In any event, as to the witnesses with health restrictions, the fact that their depositions occurred via video does not mandate or even suggest the same for trial, where "live testimony is preferred over testimony presented by way of deposition." *Fed. Trade Comm'n v. Acquinity Interactive, LLC*, No. 13 C 5380, 2014 WL 37808, at \*3 (N.D. Ill. Jan. 6, 2014); *see also Bousis v. Marriott Int'l, Inc.*, 47 F. Supp. 2d 1004, 1006 (N.D. Ill. 1999) ("[L]ive testimony of material, non-party witnesses is preferred."). As to the witness whose testimony might be presented through stipulation, it appears based on Defendants' reply brief that the parties have not yet agreed to any such stipulation. Even if this witness' testimony could be presented through stipulation, that only accounts for one of Defendants' eighteen identified witnesses.

---

[3] Savory states that two of Defendants' other witnesses spend some of the year out of the state, but that does not lead the Court to conclude that the Central District, where the witnesses spend the rest of the year, would be less convenient than Chicago.

Finally, Savory argues that the distance between Peoria and Chicago is insignificant for a transfer analysis and does not weigh in favor of transfer. *See Applied Web Sys., Inc. v. Catalytic Combustion Corp.*, No. 90 C 4411, 1991 WL 70893, at *6 (N.D. Ill. Apr. 29, 1991). But courts in this district have transferred cases to venues closer together than the Central and Northern Districts. *See, e.g.*, *Thomas v. City of Woodstock*, No. 11 C 3602, 2011 WL 3841811, at *2 (N.D. Ill. Aug. 30, 2011) (transferring case from the Eastern Division of the Northern District of Illinois to the Western Division of the Northern District of Illinois and collecting cases). Based on the information provided by the parties—specifically the number of Defendants' material witnesses who live in the Central District and would have trouble attending trial in the Northern District—this factor weighs in favor of transfer.

## II.   Interest of Justice

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Courts consider factors such as the likelihood of a speedy trial, each court's familiarity with the applicable law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id.*; *see also Coffey*, 796 F.2d at 220. As both the Northern and Central Districts of Illinois have equal familiarity with the applicable law, this factor is neutral. The Court therefore focuses its analysis on the remining factors.

"[T]o the extent that court congestion matters, what is important is the speed with which a case can come to trial and be resolved." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 710 (7th Cir. 2020). For the most recent period, the average time between filing and disposition of a civil case in the Central District of Illinois is 11.9 months versus 6.9 months in this district; the

average time from filing to trial in the Central District is 45.1 months versus 53.5 months in this district.[4]  The time-to-trial figures are not meaningfully different, *see Acquinity Interactive, LLC*, 2014 WL 37808, at *5 (noting that, where time-to-trial in the Northern District averaged 15.4 months longer than in transferee district, "[t]he time-to-trial figures [were] materially different, but . . . not terribly meaningful" because they "consist of averages for cases of all times and tell the reader nothing about cases of the particular type at issue" and the Court estimated it would take closer to eighteen months to bring the case to trial), and so the Court considers this factor neutral.

Turning finally to the desirability of resolving the controversy in each district and the relationship of each community to the controversy, the Central District's interest in this litigation weighs heavily in favor of transfer.  "It is a goal of the federal court system to allow members of the community from which the controversy arose to sit on the jury panel and decide the community-related case." *Coleman*, 2004 WL 609369, at *4 (citation omitted) (internal quotation marks omitted).  Although the Northern District has some interest, the Central District has a stronger interest as the location where "[t]he parties accused of wrongdoing" reside and "most of the alleged wrongdoing occurred." *McGowan*, 2020 WL 5848441, at *6.  The Central District has the strongest interest in ensuring the integrity of its police force and the City of Peoria. *See Huon*, 2012 WL 426908, at *6 (factor weighed in favor of transfer because "the Southern District has significantly more relation to this case and desire to resolve it than the Northern District, because it involves numerous public figures and organizations in Madison County, and the underlying investigation and trial took place there.").  And the fact that most of the witnesses and physical evidence reside in the Central District makes it a more desirable

---

[4] These figures come from the website of the United States Courts detailing federal court management statistics as of December 2022. *See* https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distcomparison1231.2022.pdf.

location for efficient resolution of the case.  *See Personett v. Pier Transp., Inc.*, No. 05 C 4852, 2005 WL 6960303, at *3 (N.D. Ill. Nov. 3, 2005) (noting that transferring the litigation to the location of most of the witnesses and evidence would lessen the "likelihood of delays in discovery and the trial due to travel difficulties").

In Savory's response, he appeals to fairness—noting that jurors in the Central District may not be as fair or impartial due to the relief that Savory seeks and the public nature of the trial, and that one of Defendants' witnesses served as a judge in the Central District.  *See* Doc. 276 at 13–14 (arguing that "the empaneling of a disinterested jury is far more likely in this District than in the Central District, given the high-profile nature of the events underlying this case," that "at least one judge of the Central District was involved in the underlying criminal proceedings and has been listed by Defendants as a witness," and that "Peoria jurors could find for the City simply because of the potential financial burden to the City rather than on the merits of the case").  This argument does not persuade the Court.  "Contrary to [Savory's] assertion, it is a goal—not a problem—of the federal court system to allow members of the community from which the controversy arose to sit on the jury panel and decide the community related case." *Doage v. Bd. of Regents*, 950 F. Supp. 258, 260 (N.D. Ill. 1997) (rejecting the plaintiff's "intimation that a panel of jurors residing within the Central District of Illinois would reach its verdict based not upon the facts before it, but on the surrounding economic and political pressures provided by [the state university]"); *Huon*, 2012 WL 426908, at *5 (rejecting the plaintiff's argument that "he would not receive a fair trial in the Southern District" where the Chief Judge of the Southern District formerly served as a judge in the county which heard the plaintiff's criminal case, reasoning that "[a]ny suggestion that a judge is incapable of being impartial cannot be given credence without actual evidence to back it" and that "[e]very day

13

federal courts in this and other districts hear cases against public officials, government entities, and police officers in their respective jurisdictions").

Considering the convenience to the parties and witnesses and the interest of justice, Defendants have met their burden to establish the propriety of transferring this case to the Central District of Illinois: most events occurred in the Central District; most of the evidence will come from the Central District; a majority of the parties and, importantly, material non-party witnesses reside in the Central District; and the citizens of the Central District "have a greater relation to and interest in resolving this case." *Huon*, 2012 WL 426908, at *6 (granting the defendants' motion to transfer where most material events occurred in the transferee district, evidence derived from the transferee district, most parties resided in the transferee district, non-party witnesses most likely resided in the transferee district, and the transferee district had greater interest in and relation to the case).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) [268]. The Court transfers this case to the U.S. District Court for the Central District of Illinois.

Dated: May 9, 2023

_____
SARA L. ELLIS
United States District Judge