*Savory v. Cannon, et al.*
Case No. 23-CV-01184
Our File No. 14-4045

# EXHIBIT 51

**SUPPLEMENTARY REPORT — CONTINUATION SHEET / PEORIA POLICE DEPARTMENT**

INCIDENT NO. 77-01588

OFFENSE CLASSIFICATION: MURDER "B"
INC. CODE: 0112
DATE OF THIS REPORT: 1-26-77

| NO. | SEC. A | SEC. B | SEC. C | SEC. D | SEC. E | NAME AND/OR ALIAS | ADDRESS | PHONE(S) |
|---|---|---|---|---|---|---|---|---|
| 1 | C/P | | | | | DOUGLAS, William E. | 3033 W. Garden | |
| 2 | S | O | S | M/N | NA | MASON, Ray C. | REDACTED | 673-3695 |
| 3 | O | O | S | F/N | NA | HAMILTON, Rosemary | | 637-5785 |

NARRATIVE:

**1-25-77, Tuesday**

At approximately 2100 hours this officer talked to probationary officer Percy Baker in the police department's Detective Division. Baker had been called to the police station regarding Johnny Savory who is a ward of the court. After Baker was briefed about Johnny's possible involvement in this case he stated he had learned that Johnny had spent Monday night, 1-17-77, the night prior to this incident, at the home of Ray Mason who lives at REDACTED. Baker stated that Johnny told him that Mason knew something about the murders that happened on Garden Street.

0130 hours, 1-26-77 — This officer, along with Off. Haynes, went to REDACTED the home of Ray Mason. Upon arrival we were met at the front door by Mason's mother. The mother stated that Mason was asleep and invited these officers to come in and wait while she woke him up.

These officers then informed Mason that Johnny Savory had told Percy Baker that he (Mason) knew something about the murders that happened on Garden Street. Mason stated that Johnny Savory was "telling a lie". Mason stated that he did not know the people that had gotten killed on Garden Street and stated that he did not know why Johnny Savory would say that he did. These officers then informed Mason that Johnny Savory had stated that he had spent the night at Mason's home on Monday, 1-17-77. Mason stated that Savory was also lying about spending the night at his home. Mason stated that Johnny Savory had not spent the night at his home for two or three months. These officers then asked Mason if Johnny Savory had been at his home at all on Monday, 1-17-77. Mason stated that Johnny Savory had been at his home on that date at approximately 1700 hours. At this point Mason's mother who was present during this interview stated that Savory had left Mason's house

REPORTING OFFICER: CHARLES H. CANNON 691

around 2100 hours that night but Mason contradicted his mother's statement by saying Savory only stayed for a half hour and left about 1430 hours that afternoon.

These officers attempted to interview Mason further in regards to Johnny Savory but were repeatedly interrupted by Mason's mother. This officer then asked Mason if he would be willing to come to the police station to be interviewed in regards to Johnny Savory. Mason agreed to accompany these officers to the station. These officers transported Mason to the station.

Upon arrival at the police station Mason was taken to interview room 215 where he was read the Miranda warning from a department issued card carried by this officer at 0210 hours. Mason stated that he understood his rights and was willing to talk to these officers.

Mason stated that on 1-15-77 Johnny Savory was at his home and accompanied him and his sister-in-law, Rosemary Hamilton, to the Kroger Store in Madison Park. Mason stated that he stayed in the car while Rosemary Hamilton and Johnny Savory went into the Kroger Store to do some shopping. He stated that when his sister-in-law, Rosemary, and Johnny returned to the car they were accompanied by a boy and a girl. Mason stated that he had never seen the boy or girl before and did not know them by name. Mason stated that Rosemary told him that they were friends of Johnny's and asked him to drop them off at their home. Mason stated that he let the boy and the girl out of the car in the area somewhere around MManual High School. Mason stated that he, Rosemary and Johnny went back to his home where they had a party that night. Mason stated that he did not see Johnny anymore until Monday, 1-17-77, at approximately 1400 hours. He stated that Johnny came to his home and stayed for about a half hour and then left. Mason stated that when Johnny left his home he assumed he was going to late afternoon school. Mason stated that he had never ran around with Johnny Savory and stated, "I don't fool around with kids".

This officer again asked Mason if he knew the names of the boy and girl he had picked up at the Kroger Store. At this time Mason stated, "It was the boy and girl that got killed on Garden Street". This officer then asked Mason why he had not stated this earlier in the interview. Mason replied by stating that he was confused and was not thinking right. At this time it was decided by these officers that Mason was either confused or was not telling these officers the truth about any knowledge he might have pertaining to this case. This reporting officer then asked Mason if he would be willing to take a polygraph examination to ascertain whether he was telling the truth in this matter. This officer further expained to Mason that he did not have to take the polygraph test if he did not wish to. Mason stated that he would take the polygraph test because he wanted to prove that he was telling the truth.

Mason was then instructed to come to the police station at 1000 hours on 1-26-77 and he would be taken to Dennis Jenkins' office for the polygraph examination.

1000 hours, 1-26-77 -- Mason came to the police station for the purpose of the polygraph test. This officer informed him that the test could not be administered until 1530 hours on this date, 1-26-77. This officer then asked Mason if he would be willing to have his fingerprints taken. Mason agreed and was taken by this officer to the fingerpint room downstairs where he was printed by Sgt. Gerontes. Mason's palmprints were also taken. Mason was then taken to interview room 221 for further interviewing in regards to this case. Mason stated that on Monday, 1-17-77, at approximately 0700 hours he was in bed asleep when he received a telephone call from his uncle, Ester Lee Risby,

| OFFENSE CLASSIFICATION | INC. CODE | DATE OF THIS REPORT | CLASSIFICATION CHANGE NEEDED | INCIDENT CODE CHANGE FROM / TO | REL. CASE NO.'S |
|---|---|---|---|---|---|
| MURDER "B" | 0112 | 1-26-77 | Y N U | | |

| NO. | SEC. A | SEC. B | SEC. C | SEC. D | SEC. E | NAME AND/OR ALIAS | ADDRESS | PHONES | D.O.B./AGE | S.S., D.L. NO., ETC. | REF. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | C | | | | | | | | | | |
| **4 | O | | | | | RISBY, Ester Lee | REDACTED | | | | |
| **5 | O | | | | | RISBY, Ruth | Springfield, Illinois | | | | |

SEC. A:  A—Arrested  B—Business, Firm, Agency  C—Complainant  BR—Bartender  M—Missing, Runaway  P—Parent, Guardian  S—Suspect  V—Victim  W—Witness  O—Other (Nar.)
SEC. B:  K—Dead Before Report  O—No Indication of Injury  A—Bleeding, Carried from Scene  B—Visible Injury  C—No Visible Injury, Momentary Unconscious, Complain of Pain
SEC. C:  S—Sober  D—Been Drinking  I—Intoxicated/Under Influence  O—Other (Describe in Narr.)
SEC. D:  M—Male  F—Female  U—Unknown  W—White  N—Negro  M—Mexican  J—Japanese  I—Indian  P—Puerto Rican  C—Chinese  O—Other          SEC. E:  POL—On Duty Police  OD—Off Duty Police

NARRATIVE:

who lives somewhere in the Warner Homes with his ex-wife. Mason stated that his uncle wanted him to go to Decatur with him to help him move his daughter, Ruth Risby, away from a man who was mistreating her. Mason stated that his uncle picked him up at his home at approximately 0745 hours and they drove to Decatur in his uncle's car which is a 1970 blue Chevy two-door. He stated that when they arrived in Decatur they rented a U-Haul truck from a 66 station. He stated that they then loaded Risby's daughter's furniture into the truck and drove it to Springfield, Illinois where they unloaded the truck. Mason stated that they then returned to Decatur and left the U-Haul truck at the 66 station and picked up his uncle's car and returned to Peoria, arriving at approximately 1800 hours.

Mason stated his uncle took him straight to his home on Kettelle St. and stated that his mother and a black male, Gene Jones, were there. Mason stated that Jones lives somewhere in the 1800 block Morton Street but he did not know the exact location. Mason stated that he stayed home the rest of the day and watched television. Mason stated that at approximately 2100 hours he went up to his bedroom and went to bed. Mason stated that he was on the phone in the bed talking to his girlfriend, Anetta Keys, when his sister, Barbara Mason, and her boyfriend, Jimmy Tyler, came up the stairs and went into the bedroom next to his. He stated that Jimmy Tyler stayed for a short period and then left. Mason stated that he talked to his girlfriend for approximately one half hour and then he went to sleep.

Mason stated that on Tuesday, 1-18-77, between the hours of 0830 and 0900 he awakened and got out of bed. He stated that he dressed and went downstairs for breakfast. Mason stated that his mother fixed his breakfast and after finishing breakfast they were standing around in the kitchen talking when the telephone rang. Mason stated that he went to the "middle room" that is located between the front room and the kitchen and answered the phone. He stated that Johnny Savory was on the other end of the line and Johnny stated to him, "Man, something sad just happened". Mason stated he asked

| REPORTING OFFICER (PRINT, TYPE) | I.D. NO. | DIVISION |
|---|---|---|
| CHARLES H. CANNON | 691 | 431 |

Signature: Charles H. Cannon

ATTACH PROPERTY TAG HERE

Johnny, "What happened, man?" He stated that Johnny told him, "Some of my friends got killed". Mason stated that he told his mother to pick up the extension phone in the kitchen because Johnny was on the phone. Mason stated that his mother picked up the phone and asked Johnny what had happened. Mason stated that Johnny told his mother, "Miss Jessie, something sad just happened". Mason stated that his mother replied by saying, "It's a sin and a shame the way people are killing each other". Mason stated that the telephone conversation was ended at that time.

1130 hours, 1-26-77 -- This officer asked Mason if he wanted something to eat. Mason stated that he did. This officer then ordered a meal and had it brought to the police station for Mason. The interview was concluded at this time and this officer told Mason that I would pick him up at 1500 hours for the purpose of going to Dennis Jenkins' office for the polygraph examination.

Prior to the second interview with Mason this officer requested that Mason give this officer a written statement as to any knowledge he might have regarding this case. Mason agreed to give the written statement. When this officer attempted to read Mason his rights prior to taking the statement Mason indicated that he did not understand what his rights were. This officer then attempted to explain to Mason his rights in simple terms several different times. Mason still stated that he did not understand his rights. This officer then asked Mason if he could read and write the English language. Mason stated that he could not read or write hardly any at all. At this time it was decided by this officer not to take the written statement from Mason.

Mason stated during the telephone conversation with Johnny on Tuesday morning at no time did Johnny go into any detail as to how his friends had gotten killed except to state that they were all stabbed and cut up. Mason stated that Johnny also said that he had some money and was going to give it to the mother of the victims to help with the funeral expenses.

INV. TO CONTINUE.....

PEORIA_SAVORY 770    604