# Exhibit (

**SUPPLEMENTARY REPORT — CONTINUATION SHEET / PEORIA POLICE DEPARTMENT**

INCIDENT NO. 77-01588

| OFFENSE CLASSIFICATION | INC. CODE | DATE OF THIS REPORT | CLASSIFICATION CHANGE NEEDED | INCIDENT CODE CHANGE FROM / TO | REL. CASE NO'S |
|---|---|---|---|---|---|
| Murder "B" | 0112 | January 26, 1977 | N | | |

| NO. | SEC. A | SEC. B | SEC. C | SEC. D | SEC. E | NAME AND/OR ALIAS | ADDRESS | PHONE(S) | D.O.B./AGE | S.S., D.L. NO., ETC. |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | C/V | | | | | COOPER, Connie | 3033 W. Garden | | | |
| | V | | | | | ROBINSON, James | 3033 W. Garden | | | |
| | O | | | | | HART, Toby | 1719 W. Kettelle | 673-3125 | | |

SEC. A: A–Arrested B–Business, Firm, Agency C–Complainant BR–Bartender M–Missing, Runaway P–Parent, Guardian S–Suspect V–Victim W–Witness O–Other (Nar.)
SEC. B: K–Dead Before Report O–No Indication of Injury A–Bleeding, Carried from Scene B–Visible Injury C–No Visible Injury, Momentary Unconscious, Complain of Pain
SEC. C: S–Sober D–Been Drinking I–Intoxicated/Under Influence O–Other (Describe in Narr.)
SEC. D: M–Male F–Female U–Unknown W–White N–Negro M–Mexican J–Japanese I–Indian P–Puerto Rican C–Chinese O–Other    SEC. E: POL–On Duty Police OD–Off Duty Police

**NARRATIVE:**

1300 hours — January 25, 1977 — Tuesday

These officers (Haynes & Pinkney) arrived at Central High School. We contacted Officer Stinson, in an attempt to verify information previously developed through an interview with JACKSON, DAVID, B/M student at late afternoon high school, that indicated a B/M individual named "JOHNNY" was with the victim Robinson on the night immediately preceeding the discovery of the incident. Officer Stinson stated that he would make arrangements to have a search conducted of possible students on file, with the first name of "JOHNNY" and that he would approach adminstrative assistant Mr. Smarjustie, concerning the feasibility of broadcasting this request over the school intercom. Subsequently Mr. Smarjustie contacted these officers and we were reassured that he would make the necessary arrangements to have this message broadcast the intercom at a later hour, as soon as possible. At 1340 hours we then left Central High School.

1400 hours

We arrived at late afternoon high school, 412 S.W. Washington, and immediately proceeded to the office of the principal, Mr. Sam Richardson. Mr. Richardson who was informed that the nature of our visit was to establish the identity of the above individual, named "JOHNNY" and he was possibly a student at late afternoon classes. Mr. Richardson was able to supply the names of three (3) students whose identities were particially given to Officer Haynes, during an interview with DAVID JACKSON earlier on this date. These individuals as follows;

    HART, Toby
    HARVEY, Richard
    JACKSON, Bobby

Mr. Richardson also stated that he would assist us in locating these individuals.

REPORTING OFFICER: Pinkney & Haynes

PEORIA_SAVORY 745

NARRATIVE:

ATTACH PROPERTY TAG HERE

FIELD COMMUNICATIONS    HRS.
☐ Flash Message
☐ LEADS/NCIC Inquiry
☐ LEADS/NCIC Entry
☐ License Inquiry
☐ Inter-Dept. Requests
☐ Other Communication
☐ Cancellation Made

1440 hours
Mr. Richardson directed HART, TOBY, into the Teacher's break room, located immediately adjacent to his respective office, where we were seated. When we asked this individual about "JOHNNY" he replied that he was aware of a B/M student that he addressed as "JOHNNY LEE" and that he knew that this individual associated with the male victim, ROBINSON, commonly known to others in the peer group as "SCOBY". HART was able to describe this individual as having buck teeth with some of his front dentures missing. He also told these officers that he did not know this individual's last name. When we asked HART as to how we would be able to contact this individual, he stated that he could be found in room 15 or room 16 immediately adjacent to the principal's office, upon the commencement of the school day, at approximately 1530 hours. Mr. Richardson was able to tell these officers when we supplied him with these respective details, that the only student fitting that description and currently assigned to those rooms, would be one JOHNNY SAVORY. Mr. Richardson also told us that this individual has been on suspension and was due back on this date. He also related that his secretary had received a call from a party stating he was JOHNNY SAVORY; this party questioned the secretary as to when his current suspension was to expire, and when to report back to late afternoon high school. He was instructed by the secretary to report on this date, as his suspension had expired.

HART, TOBY, added that he was aware that "JOHNNY LEE" was known to associate with another B/M named MASON, RAY, currently residing in the 1800 block of Kettelle Street. HART described this person as being approximately 19 years of age.

When we described the knife believed to be in the possession of "SCOPY" prior to the incident, HART confirmed our description and stated that a counselor, possibly by the name of McCANN, had confiscated the weapon from the person of ROBINSON, sometime before Thanksgiving at the school. HART concluded by stating that his relationship with the deceased victim, ROBINSON, began while both were residents of the Taft Homes Project.

At 1450 hours this officer talked to GERALD McCANN and asked him if he knew the victim James Robinson, and had knowledge of a pocketknife, brown in color, with multi blades. He stated that the youth had displayed one in his class, and as close as he could remember it was in the month of November, and that at that time he had taken the knife from the student and kept it in his office, with the understanding that if he would bring his parents to the school, he would turn the knife over then. He states the knife was not used in any type of an assault, but that the youth displayed his knife in class, and for the safety of the class, and because of District 150 policy, the knife was taken from the student. According to him the parents did not come in, as far as he knows they were not notified, and the knife has been in his office since the time it was taken from the student. This officer initialed this officer and it was tagged with tage #29523 and placed in an evidence locker.

1451 hours
Officer Haynes was able to contact HARVEY, RICHARD concerning his possible knowledge of the student named "JOHNNY" an associate of the deceased Male victim. HARVEY stated that he was also aware of a student named "JOHNNY LEE", but he was not able to give this officer the last name of the student. HARVEY told this officer that he had a past association with the deceased male victim, from their student days at McKinnley Grade School.

SUPERVISOR APPROVING    I.D. NO.

**SUPPLEMENTARY REPORT — / PEORIA POLICE DEPARTMENT**
**CONTINUATION SHEET**

INCIDENT NO. 77-01588

| OFFENSE CLASSIFICATION | INC. CODE | DATE OF THIS REPORT | CLASSIFICATION CHANGE NEEDED | INCIDENT CODE CHANGE FROM / TO | REL. CASE NO.'S |
|---|---|---|---|---|---|
| Murder "B" | 0112 | January 26, 1977 | | | |

NARRATIVE:

HARVEY informed this officer that he had been told by DAVID JACKSON previously referred to in this supplementary report, that "SCOPY" mother had threatened him (JACKSON) with a knife sometime in the past, that had only "cut the sheets".

1505 hours
JACKSON, BOBBY was contacted by this officer in the above mentioned room. This individual told these officers that he was not aware of the exsistance of a student currently enrolled in late afternoon high school, by the name of "JOHNNY LEE". JACKSON did allude to the fact that the victim, ROBINSON, had told him that he had experienced problems with his respective step-father-PETER DOUGLAS, but failed to elobrate on same.

1510 hours
MARLOTT, NICKY was interviewed. MARLOTT confirmed that he had been involved in an incident with the deceased victim, Robinson, in which both engaged in a fight approximately 2 months ago, resulting in their respective suspensions from the school. MARLOTT stated that no injuries were incurred by either party and that fists were utilized in opposition to any type of weapons. He attributed this incident to name calling, and he stated that he was on a friendly basis with the victim prior to this incident. MARLOTT also stated that he possessed no knowledge concerning a individual named "JOHNNY LEE".

REPORTING OFFICER: Pinkney & Haynes

ATTACH PROPERTY TAG HERE

Flash Message
LEADS/NCIC Inquiry
LEADS/NCIC Entry
License Inquiry
Inter-Dept. Requests
Other Communication
Cancellation Made

1515 hours
Mr. Richardson came to the teacher's break room and informed us that he had received a telephone call from SHERMAN WILLIAMS, an offical of Juvenile Court Services, to the effect that JOHNNY SAVORY would be arriving shortly at school, as he was in transit from their respective office, at the courthouse.

1530 hours
JOHNNY SAVORY was directed into our location by Mr. Richardson. SAVORY seatdd himself in a chair at the head of the table, with Officer Haynes seated to his immediate right and Officer Pinkney to his immediate respective left.

When Officer Haynes said to SAVORY, "we would like to talk to you about SCOPY.". SAVORY immediately areplied, "I don't want to talk about it.". "I won't make any statements.". These officers then informed SAVORY that we were attempting to gain information concerning the homicide in question, and that her was a good friend of the victim's. Thus, he might be able to give us information that would lead to the eventual apprehension of the assailant. At this point SAVORY stated to the effect that he would help these officers. He said, "OK, I will talk to you.".

The following is a description of the dialogue between these officers and SAVORY during this oral interview;
Q. We know you were with the victim Monday, would you tell us when you first saw him?
A. 3:30 here at school.

Q. What time did you leave school?
A. 6:30, we got out of school, caught a bus and went to his home (3033 W. Garden)

Q. What time did you get to the house?
A. About 7:00

Q. What did you do then?
A. We took the garbage cans to the rear and then Jimmy copened the doors with a key he got out of the mailbox. I told him that I thought that was dumb, meaning the keys out like that.

Q. What did you do next?
A. We went into the kitchen and Jimmy opened a can of corn and put it in the skillet. I cut up some hot dogs, with my knife and put them in and we heated it up. We both ate this and we drank water, both of us drank from a Leo cup.

Q. What did you do with your dishes?
A. We cleaned them up

Q. Did you eat or drink anything else?
A. No

Q. Then what did you do?
A. We went into the frontroom, put the TV on the floor, the long table across the arm of the chair and started wrestling

**SUPPLEMENTARY REPORT — / PEORIA POLICE DEPARTMENT**
CONTINUATION SHEET

| OFFENSE CLASSIFICATION | INC. CODE | DATE OF THIS REPORT | CLASSIFICATION |
|---|---|---|---|
| Murder "B" | 0112 | January 26, 1977 | |

| NO. | SEC. A |
|---|---|
| 1 | C |

---

Q. Who put the TV on the floor?
A. Scopy

Q. After that what did you do?
A. We went back into his bedroom and started using the nightsticks (and some word indicating he was using Chuga sticks practicing Karate)

Q. Can you describe the night stick?
A. Black like the Police use, with a string

Q. Did you use another stick?
A. No, there was a metal pole but we didn't use it. It was tan in color. I used the (again some word indicating Chuga sticks)

Q. Where did Jimmy get these sticks?
A. They were hanging in his room

Q. Then what did you do?
A. We left and went to Melba's house

REPORTING OFFICER: Pinkney & haynes

| | |
|---|---|
| Q. About what time was this? | |
| A. About 8:00 | |
| Q. Was there anyone else at Jimmy's house, while you were there? | |
| A. No | |
| Q. What did you do at Melba's | |
| A. We talked for awhile and then she gave me $4 and we left | |
| Q. About what time was this? | |
| A. About 9:00 | |
| Q. What did you do then? | |
| A. I gave Scopy $2 and I took $2, we went to that chicken place on the hill | |
| Q. What did you do there? | |
| A We both got three pieces of chicken | |
| Q. Did either of you have anything else? | |
| A. We had a roll, he had a sprite and I had a root beer | |
| Q. How long were you there? | |
| A. We took our time, maybe 10:00 | |
| Q. Then what did you do? | |
| A. Melvin called us a dirty name, so we chased him over the hill over the hill and all the way home. | |
| Q. What did you do next? | |
| A. We went to Scopy;s house | |
| Q. Was anybody there at this time? | |
| A. His mother, step father, sister and the baby | |
| Q. What were they doing when you got there? | |
| A. Watching a basketball game on TV | |
| Q. What were his mother and step father doing? | |
| A. They were sitting there, on the couch and she was folded up in his arms. | |
| Q. What was his sister doing? | |
| A. Sitting in the chair, talking to a girlfriend on the phone | |
| Q. What did you do next? | |

**PEORIA POLICE**
N° 29523
CASE NO. 77-01588  DATE 1/25/77
DESCRIPTION: 1- KNIFE - BROWN HANDLE - 10 BLADES "STAINLESS STEEL JAPAN" SCOUT KNIFE
☐ EVIDENCE   ☒ NON-EVIDENCE
OFFICER PINKNEY  BADGE 684



**SUPPLEMENTARY REPORT — / PEORIA POLICE DEPARTMENT**
**CONTINUATION SHEET**

77-01588

| OFFENSE CLASSIFICATION | INC. CODE | DATE OF THIS REPORT | CLASSIFICATION CHANGE NEEDED | INCIDENT CODE CHANGE FROM / TO | REL. CASE NO.'S |
|---|---|---|---|---|---|
| Murder "B" | 0112 | January 26, 1977 | Y / N / U | | |

| NO. | SEC. A | SEC. B | SEC. C | SEC. D | SEC. E | NAME AND/OR ALIAS | ADDRESS | PHONE(S) | D.O.B./AGE | S.S., D.L. NO., ETC. | REF. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | C | | | | | | | | | | |

SEC. A: A–Arrested  B–Business, Firm, Agency  C–Complainant  BR–Bartender  M–Missing, Runaway  P–Parent, Guardian  S–Suspect  V–Victim  W–Witness  O–Other (Nar.)
SEC. B: K–Dead Before Report  D–No Indication of Injury  A–Bleeding, Carried from Scene  B–Visible Injury  C–No Visible Injury, Momentary Unconscious, Complain of Pain
SEC. C: S–Sober  D–Been Drinking  I–Introxicated/Under Influence  O–Other (Describe in Narr.)
SEC. D: M–Male  F–Female  U–Unknown  / W–White  N–Negro  M–Mexican  J–Japanese  I–Indian  P–Puerto Rican  C–Chinese  O–Other     SEC. E: POL–On Duty Police  OD–Off Duty Police

NARRATIVE:

A. We went into Scopy's room and practices KungFu and listened to music.

Q. Where was tha baby?
A. He was at the head of Scopy's bed

Q. What happened next?
A. I left right at 11:00

Q. Where did you go?
A. Home

Q. How did you get there?
A. walked, hitch=hiked

Q. How long did it take you?
A. Til 12:00

Q. What did you do when you got home?
A. Called Scopy/s house

REPORTING OFFICER: Pinkney & Haynes

ATTACH PROPERTY TAG HERE

FIELD COMMUNICATIONS  HRS.
☐ Flash Message
___ ☐ LEADS/NCIC Inquiry
___ ☐ LEADS/NCIC Entry
___ ☐ License Inquiry
☐ Inter-Dept. Requests
☐ Other Communication
☐ Cancellation Made

Q. What time was that?
A. As soon as I got home, 12:00, I used a neighbors's phone, downstairs.

Q. How long did you talk
A. Til after 1:00, between 1:00 and 2:00

Q. Did he say anything about having trouble with anyone in his family at this time?
A. He stated that he didn't like his dad

Q. Did you hear anything in the background, that would indicate there was any kind of trouble?
A. No, when his dad left, he said good bye to him, that was at 1:00

Q. Did Scopy say anything to indicate that he was having trouble with someone?
A. He asked me to come over at 8:00 sharp, he said he had someone to deal with and he wanted my help

Q. Did you go over at 8:00?
A. No

Q. Why not?
A. I forgot

Q. Did you ever know Scopy to carry a weapon?
A. Yes, a pocket knife

Q. Describe this knife?
A. It was a black knife, one blade, sharp as a razor?

Q. How big was the knife?
A. The youtht indicated a knife about 5" long

Q. How do you know how sharp it was?
A. I sharpened it for him, I bought one at the same time as he did, at Murray's it was about $1.49, but not over $3 or $4

Q. When was the last time you saw this knife?
A. Monday

Q. Where was the knife?
A. In his pants, it had a hoop and he pinned it inside (youth points to the area above the left pocket)

Q. Would you be willing to go down to the station with us and answer questions that the other detectives might want to ask you?
A. Ok

SUPERVISOR APPROVING    I.D. NO.

**SUPPLEMENTARY REPORT — CONTINUATION SHEET / PEORIA POLICE DEPARTMENT** — 77-01588

| OFFENSE CLASSIFICATION | INC. CODE | DATE OF THIS REPORT | CLASSIFICATION | INCIDENT CODE CHANGE | REL. CASE NO.'S |
|---|---|---|---|---|---|
| Murder B | 0112 | | Y N U CHANGE NEEDED | FROM TO | |

SEC. A: A–Arrested  B–Business, Firm, Agency  C–Complainant  BR–Bartender  M–Missing, Runaway  P–Parent, Guardian  S–Suspect  V–Victim  W–Witness  O–Other (Nar.)
SEC. B: K–Dead Before Report  O–No Indication of Injury  A–Bleeding, Carried from Scene  B–Visible Injury  C–No Visible Injury, Momentary Unconscious, Complain of Pain
SEC. C: S–Sober  D–Been Drinking  I–Intoxicated/Under Influence  O–Other (Describe in Narr.)
SEC. D: M–Male  F–Female  U–Unknown / W–White  N–Negro  M–Mexican  J–Japanese  I–Indian  P–Puerto Rican  C–Chinese  O–Other    SEC. E: POL–On Duty Police  OD–Off Duty Police

**NARRATIVE:**

As these officers were leaving this location, the SAVORY youth informed us that he had a knife at his residence, that was the same as the one the victim was supposed to have. This youth stated that he would take us to his house and let us look at the knife, thereby obtaining a brand name and description, for our report.

These officers went with the SAVORY youth to his home, but his father was not there at this time and he could not gain entry to the apartment. The SAVORY did state, when he got back, that he thought his father had the knife with him, and as far as he knew his father was at the St. Mark's Medical Building at this time. SAVORY youth was then brought to the station, and questioned by Officer Fiers, Officer Cannon, Officer Haynes and Officer Pinkney.

These officers left 412 S.W. Washington Street, at 1608 hours.

Mr. Murphy, our police department legal advisor, was informed of each development and consulted periodically by these respective officers with the assistance of Sgt. Tiarks.

REPORTING OFFICER: Pinkney & Haynes

ATTACH PROPERTY TAG HERE

- [ ] Flash Message
- [ ] LEADS/NCIC Inquiry
- [ ] LEADS/NCIC Entry
- [ ] License Inquiry
- [ ] Inter-Dept. Requests
- [ ] Other Communication
- [ ] Cancellation Made

SUPERVISOR APPROVING    I.D. NO.

PEORIA_SAVORY 754

| NO. | SEC. A | 2. NAME AND/OR ALIAS | ADDRESS, NO., CITY, STATE, ZIP | PHONE(S) RES/BUS |
|---|---|---|---|---|
| | O | HARVEY, Richard | 601 W. Third | 673-9274 |
| | O | McCANN, Gerald | 1624 Timberdale, Dunlap, Ill | 242-5722 |
| | O | JACKSON, Bobby | 1318 W. Martin | none |
| | O | MARLOTT, Nicky | 1031 N.E. GlenOak | 682-3655 |
| | A | SAVORY, Johnny, L. | 1011 W. Hulburt | none |



PEORIA_SAVORY 755   594