# Exhibit $(

| Page | | of | | Pages | SUPPLEMENTARY REPORT — | PEORIA POLICE DEPARTMENT | | INCIDENT NO. |
|---|---|---|---|---|---|---|---|---|
| | 1 | | 5 | | CONTINUATION SHEET | | | 77-01588 |

1:28 CV-01041-CNLSF   # 318-26   Filed: 04/22/24   Page 2 of 6

| OFFENSE CLASSIFICATION | INC CODE | DATE OF THIS REPORT | CLASSIFICATION Y N U CHANGE NEEDED | INCIDENT CODE CHANGE FROM — TO | REL. CASE NO.'S |
|---|---|---|---|---|---|
| Murder B | 0112 | 1-18-77 | | | |

| NO. | SEC.A | SEC.B | SEC.C | SEC.D | SEC.E | NAME AND/OR ALIAS | ADDRESS (NO., CITY, STATE, ZIP) | PHONE(S) RES. BUS. | D.O.B. | S.S., D.L. NO., ETC. | REF. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | C / V | | | F/N | | COOPER, Connie L. | 3033 W. Garden | | Age: 19  REDACTED | | |
| 2 | V | | | M/N | | ROBINSON, James | 3033 W. Garden | | | | |
| 3 | O | Unk | Unk | M/W | | MARLOTT, William J. ✓ | 3028 W. Marquette | 637-4751 | Unk. | Unk. | |

SEC. A:  A—Arrested   B—Business, Firm, Agency   C—Complainant   T—Bartender   M—Missing, Runaway   P—Parent, Guardian   S—Suspect   V—Victim   W—Witness   O—Other (Narr.)
SEC. B:  K—Dead Before Report   O—No Indication of Injury   A—Bleeding, Carried from Scene   B—Visible Injury   C—No Visible Injury, Momentary Unconscious, Complain of Pain
SEC. C:  S—Sober   D—Been Drinking   I—Intoxicated/Under Influence   O—Other (Describe in Narr.)
SEC. D:  M—Male  F—Female  X—Unknown  /  W—White  N—Negro  M—Mexican  J—Japanese  I—Indian  P—Puerto Rican  C—Chinese  O—Other   SEC. E:  POL—On Duty Police   OD—Off Duty Police

| NO. | HGT. | WGT. | HAIR (DESC.) | EYES | GLASSES (DESC.) | COMPLEXION | PANTS/SKIRT | SHIRT/BLOUSE | COAT | HAT/CAP | IDENTIFIABLE PHYSICAL CHARACTERISTICS | OLIS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | P.J. |

| V.I.N. NO. | □ VICTIM □ SUSPECT □ OTHER | YR. | MAKE | MODEL | STYLE | COLOR TOP BOTTOM | LIC. NO. | ST. | YR. | OTHER DESC. DATA | VALUE | CODE | OLIS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| TYPE PROPERTY | CODE | T R L D O | MFR. | MODEL NO. | SER. NO. | COLOR | VALUE | OTHER DESC. DATA | OLIS |
|---|---|---|---|---|---|---|---|---|---|

| LAB | CID | PHOTO | PATROL SGT. | CORONER | OTHER |
|---|---|---|---|---|---|

| CONTINUATION SHEET ONLY □ | NARRATIVE: |
|---|---|

This officer received an assignment from Sgt. Gillespie at 1700 Hours to proceed to the Peoria County Court House to give Officer Fiers an escort to the scene of a double homicide at 3033 W. Garden St. This officer arrived with Officer Fiers at the scene and at that time, was assigned by Captain Marteness to canvas the Marquette St. to determine if anyone living on Marquette had heard or seen anything out of the ordinary that happened on Garden St.

This officer stopped at the first address being 3028 and found no one home. The next house I checked was at 3014, the home of the Fire Chief for the City of Peoria. I talked to his wife who was home all day except for approximately an hour and 15 minutes, from about noon until 1:15. She reported not hearing or seeing anything. This officer questioned her in regard to possibly hearing a dog barking and she reported that she did not hear a dog bark. The next house this officer checked was at 3002 W. Marquette, the home of a Mr. and Mrs. Crosiar. Mrs. Crosiar was home all day and reported that she did not hear nor see anything. She did report that her insurance agent from Prudential Life Insurance Co. had stopped and collected in the afternoon about 12:30 or 1:00.

This officer then came 10-19 to the police department and checked with Sgt. Tiarks of the Violent Crime Unit. This officer received an assignment from Sgt. Tiarks to interview the above William E. Douglas who was the step-father of the victims in this case. In my interview of this subject, I talked at length with him in regards to what happened and what he could tell me about this double homicide. Douglas informed this officer that he had been married to the mother of the victims and had been divorced from her in August of 1976. He reported that he and she were starting to get back together again approximately since November, around Thanksgiving, of 1976. He reported that he had spent the night at her home

| CAN OFFENDER BE IDENTIFIED Y □  N ☒ | BY WHOM | REPORTING OFFICER (PRINT, TYPE) | I.D. NO. | REPORTING OFFICER (PRINT, TYPE) E. HOPKINS JR. | I.D. NO. 571 | DIVISION | CAR NO | DIST. | SUPERVISOR APPROVING | I.D. NO. |
|---|---|---|---|---|---|---|---|---|---|---|
| EXTRA COPIES TO | | SIGNATURE | | SIGNATURE  E. Hopkins Jr. | | RPT. RVW. | CLR. | REF. | EXTENSION ☒ UTILITY SHEET | FILE PAGE NO. N |

Page 2 of 5 Pages | NARRATIVE:
1:23-cv-01184-CRL-JEH  # 318-26   Filed: 04/22/24   Page 3 of 6

FIELD COMMUNICATIONS | HRS.
- ☐ Flash Message
- ☐ LEADS/NCIC Inquiry
- ☐ LEADS/NCIC Entry
- ☐ License Inquiry
- ☐ Inter-Dept. Requests
- ☐ Other Communication
- ☐ Cancellation Made

ATTACH PROPERTY TAG HERE

at 3033 W. Garden St., that he had only left for a little while during the evening when he had gone to the home of his friend's ex-wife being a Toni Mills, when he attempted to start the car of his friend at that address. He reported that he had left the house approximately 10:30 to go to that address of his friend's ex-wife being 2200 N. Jefferson, but he could not get this car started. He then gave the friend's ex-wife a ride down on Sixth St. where she picked up a van. He reported that he got back home at approximately 12:00 after first stopping by 1317 W. Martin to inform his friend, James Mills, that he was staying at his ex-wife's house in case his employer would try to get ahold of him. He reported that he had told Mr. Mills that he would pick him up and take him to work the next morning since he knew that the car would not start. He stated that he watched television at the home of his ex-wife and that he slept on the couch, that he, along with his ex-wife, left the home between 6:30 and 6:35 a.m. on this date, 1-18-77, and went to the home of his friend, James Mills, at 1317 W. Martin and waited a couple of minutes before Mr. Mills came down. The three of them then stopped and had coffee at Ike & Swanies on Franklin St.

They then took Mr. Mills to work at Keifer Electric and dropped him off, this being prior to 17:15 a.m. on this date, and then took his wife to Foster Jacobs Electric and dropped her off prior to 7:30, her reporting time. He reports that he then went back to 1317 Martin for the purpose of changing clothes. He stopped at the Starr Station on Jefferson and obtained $5 worth of gasoline and a package of cigarettes prior to his arrival at 1317 Martin. He changed clothes at this address. He then called Mr. Mills at Keifer Electric to determine if he could get off so they might go to Mr. Mills' ex-wife's at 2200 N. Jefferson to start the car. It was confirmed that Mr. Mills could leave so he then returned to Keifer Electric, left the car running outside, and went in. Mr. Mills then told him that they could have a cup of coffee prior to going. He reported that he arrived back at Keifer Electric at approximately 8:05 a.m. They drank the coffee. They then drove up Washington, past the Taft Housing up Adams St., to the intersection of Adams and Jefferson, and turned around and came back down Jefferson and stopped at the first house on the left hand side of the street where the ex-wife lived. The car was setting in front of this house. They then started the car and after starting the car, they went their separate ways.

He reported that it was approximately 8:20 a.m. at this time and that he drove down Jefferson to Second St. and started going down Second towards the Park Funeral Home where he does odd jobs. On his way, he passed by the intersection of Fisher and Second and saw another friend named Billy Southerland. He picked him up and took him to the Jefferson Building at Fulton and Jefferson. He then went back down Jefferson to Second Avenue to the Parks Funeral Home where he arrived at between 8:40 and 8:45 a.m. Mr. Parks was at the funeral home. He reported that there was some talk between them, that the phone rang at approximately 8:55 a.m., and that Mr. Parks left at approximately 9:00 a.m. He reported that Mr. Parks was gone for a half to three quarters of an hour and arrived back at the funeral home somewhere around 9:35. During the period of time when Mr. Parks was gone, he reported that he did odd jobs in the funeral home and had cleaned both the men's and women's rest rooms. He did not leave during this period of time. Mr. Parks and he then left the funeral home at approximately 11:30 where they went to Randall's Foods. Mr. Parks and he then left Randall's and went to Mr. Parks home where they had a couple of beers and ate some polish sausage sandwiches. He reported that after that, they went back to the funeral home and he remained there until approximately 3:52 p.m. when he left to go get his wife.

He picked her up at Foster Jacobs and went down to the home at 3033 W. Garden and upon arrival there, they could not get in the house. He reports both he and his wife knocked on the door and could not arouse anyone. He reported that his wife went to the rear of the house and tried the rear door but could not gain entrance as it was also locked. He then

**SUPPLEMENTARY REPORT — PEORIA POLICE DEPARTMENT**
CONTINUATION SHEET

| | |
|---|---|
| INCIDENT NO. | 77-01588 |
| OFFENSE CLASSIFICATION | Murder B |
| INC. CODE | 0112 |
| DATE OF THIS REPORT | 1-18-77 |
| CLASSIFICATION CHANGE NEEDED | N |

| NO | SEC.A | SEC.B | SEC.C | SEC.D | SEC.E | NAME AND/OR ALIAS | ADDRESS |
|---|---|---|---|---|---|---|---|
| 1 | C / V | | | | | COOPER, Connie L. | 3033 W. Garden |

**NARRATIVE:**

reported that she tried the garage door and the garage door opened. Entrance was then gained to the house off of the garage via a garage inside door to the house. After arriving in the house, he determined that someone had been there and caused a mess in the kitchen and that he noticed the television was over-turned in the living room. He went to the room of his step-daughter and upon opening the door, saw her laying across the bed and saw his step-son laying on the floor. He then kept his ex-wife from entering and at this time heard his grandson, a two year old black male, call him by name. The grandson was in another bedroom and the door to this room had been shut. He then tried to call the police but could not as the phone was out of order. He then reported that he took his ex-wife and grandson out to the car and started it so that they might remain warm. He then went to the used car lot of Pat Adair. He attempted to use the phone there but said he could not get through and a subject there made the call for him requesting the police and an ambulance be sent to the address. He, at this time, returned to the house with Mr. Adair and another subject and went inside and went back to the bedroom where the deceaseds were found. He said that he could not remember whether he had placed the phone back on the hook or whether Mr. Adair or the other unknown subject had replaced the phone on the hook. He reported at this time that they just waited until the police arrived at the scene.

This officer went over this information with Mr. Douglas several times and then checked with Sgt. Tiarks. Sgt. Tiarks informed me that there had been a bottle of scotch left in the living room and part of a cut off cue stick in one of the bedrooms and that I should talk to the subject in regards to this. This officer then talked to Mr. Douglas and he reported that the bottle of Johnny Walker Scotch was his and that he had a drink from this bottle last night after returning from attempting to start the car of his friend. This officer asked Mr. Douglas if there were any pets in the home and he replied that there was a German Shepard and a cat. I asked him how old the German Shepard was and he reported that it was

REPORTING OFFICER: E. HOPKINS JR. I.D. NO. 571 DIVISION 433

| Page | of | Pages | NARRATIVE | FIELD COMMUNICATIONS | HRS. |
|---|---|---|---|---|---|
| 4 | | 5 | | ☐ Flash Message | |

1:23-cv-01184-CRL-JEH   #318-26   Filed: 04/22/24   Page 5 of 6

☐ LEADS/NCIC Inquiry
☐ LEADS/NCIC Entry
☐ License Inquiry
☐ Inter-Dept. Requests
☐ Other Communication
☐ Cancellation Made

ATTACH PROPERTY TAG HERE

two years old. He reported that the dog is very protective of family members but upon his arrival at the house with his ex-wife, the dog was at large in the house. Mr. Douglas does not recall a cut off cue stick being in the house.

This officer then requested of Mr. Douglas if he would be willing to give me a typewritten statement as to what had happened during the evening hours and day time hours of 1-17-77 and 1-18-77 and after obtaining the statement, if he would be willing to take a polygraph examination. Mr. Douglas reported that he would gladly give a statement and that he would take a polygraph examination on the written statement.

This officer, in interview room 215, then took a seven page typewritten statement from Mr. Douglas typed by Joyce Tucker. Standard technique was used in this statement. It was on a long form. The subject was first advised of his Constitutional Rights per the form and understood these rights prior to giving the statement. The statement was then taken. The subject, after taking the statement, read and signed all pages and initialed all typographical errors on the statement. The subject did report that he would be willing to take a polygraph examination on this statement and a copy of the statement was made available to Mr. Dennis Jenkins so that a polygraph could be administered this evening.

Page 5 of 5 Pages

# UTILITY EXTENSION SHEET / PEORIA POLICE DEPARTMENT

**Incident Number:** 77-01588

| NO. | SEC. A | SEC. B | SEC. C | SEC. D | SEC. E | NAME AND/OR ALIAS | ADDRESS, NO., CITY, STATE, ZIP | PHONE(S) RES./BUS. | D.O.B./AGE | S.S., D.L. NO., ETC. | REF. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 0 | 0 | S | M/W | | FISCHER, Lowell L. | 3014 W. Marquette | 637-1379 | Unk. | Unk. | |
| 6 | 0 | 0 | S | M/W | | CROSIAR, Kenneth W. | 3002 W. Marquette | 637-6592 | Unk. | Unk. | |
| 7 | O/P | | | M/N | | DOUGLAS, William E. | 1317 W. Martin | 674-1447 | REDACTED | | P.J |

**4. REPORTING OFFICER:** 

**5. REPORTING OFFICER:** E. HOPKINS JR.    I.D. NO. 571

**6. SUPERVISOR APPROVING:**

PEORIA_SAVORY 66